[S. F. No. 4775. In Bank.—July 1, 1907.]

CITY OF REDLANDS et al., Petitioners, v. A. E. BROOK, as Treasurer of the City of Redlands, Defendant.

MUNICIPAL CORPORATIONS — BONDS FOR CURRENT EXPENSES — ELECTRIC LIGHTING—CARE OF STREETS.—Under section 862 of the Municipal Incorporation Act of 1883 (Stats. 1883, p. 93), a municipal corporation of the sixth class has power to incur the expense of purchasing electric lighting from a private company and the expense of the care and maintenance of the streets and public places in the city, and, under section 866 of that act, has power to issue the bonds of the city to supply any deficiency in the funds applicable to such purposes. Whether section 866 of that act has been repealed by

the act of February 25, 1901, (Stats. 1901, p. 27,) conferring authority to create a bonded indebtedness for the sole purpose of permanent improvements, the cost of which could not be paid out of the ordinary annual income of the municipality, is not decided.

ID.—LEGISLATURE MAY VALIDATE PAST TRANSACTIONS—VESTED RIGHTS. —In the absence of constitutional restrictions, the power of the legislature to validate past transactions which it could have authorized in advance is restrained only by the necessity of protecting vested rights, and in the case of bonds to be issued by a municipality there are no vested rights to be guarded.

ID.—LEGALIZING MUNICIPAL BONDS—ACT OF MARCH 4, 1907—CONSTITUTIONAL LAW—SPECIAL LEGISLATION.—The act of March 4, 1907, legalizing bonds to be issued and sold by municipalities where authority for such issuance has been given by a vote of more than two thirds of the electors of such municipality, is not a special law, and is not in conflict with subdivisions 14 or 18 of section 25 of article IV of the constitution, forbidding the enactment of special laws giving effect to invalid deeds, wills, or other instruments, or legalizing, except as against the state, the unauthorized or invalid act of any officer. It is a curative act, and retroactive in its operation, applying exclusively to past transactions; but it embraces all municipal corporations, and every case in which not less than two thirds of the qualified electors voting at a special election called for the purpose have approved the proposed issue of municipal bonds. The fact that the law is limited in its application to bonds sold after its passage, and for not less than par, does not render the law special in a constitutional sense.

APPLICATION for a Writ of Mandate to compel the defendant, as Treasurer of the City of Redlands, to sign certain municipal bonds.

The facts are stated in the opinion of the court.

F. A. Leonard, for Petitioners.

Henry M. Willis, for Defendant.

BEATTY, C. J.—This is an original proceeding in which the plaintiffs pray for a writ of mandate to compel the defendant to sign certain municipal bonds which the plaintiffs propose to issue. The cause has been submitted upon a general demurrer to the complaint for want of facts. The material facts alleged, and by the demurrer admitted, are that Redlands is a city of the sixth class; that its board of trustees at a regular meeting duly adopted, by a vote of more than two thirds of all its mem-

bers, a resolution declaring it necessary to incur an indebtedness of fifty thousand dollars for the following purposes: "For electric lighting of said city to be furnished by private company for the fiscal year 1907; and for the care and maintenance of streets and public parks of said city for said fiscal year (not including, however, any municipal improvements of any kind or nature whatever);" that said resolution was approved by the executive of said city; that an ordinance was duly passed calling for a special election at which the electors of said city should vote on the question of the issuance of the bonds; that the election was duly held, and that out of a total of 852 votes 753 were in favor of issuing the bonds; that thereupon an ordinance was duly passed providing for the issuance and sale of the bonds by which it was made the official duty of the defendant to sign the bonds and coupons; that demand was made upon him to sign said bonds and coupons, but he refuses to do so, alleging as his reason for such refusal "that said bonds are invalid and void and would not create a legal obligation against said city if signed or executed by him."

It is further alleged that said proposed indebtedness of fifty thousand dollars will not exceed, together with all the indebtedness of said city, in the aggregate, fifteen per cent of the assessed value of all the real and personal property in said city. These, with other allegations of the complaint, it is conceded, show that all the constitutional and statutory requirements as to procedure in the matter of the issuance of municipal bonds have been fully complied with, but it is objected that the purposes for which the proceeds of the bonds are to be used are not among those for which municipal corporations are authorized to borrow money.

The declared purposes to which the proceeds of the bonds were to be applied, no less than the concluding portion of the resolution to incur the indebtedness,—the part in parenthesis, —which was carried into the ordinance subsequently passed, show that the proceedings were not intended to be based on the act of February 25, 1901, (Stats. 1901, p. 27,) which confers authority to create a bonded indebtedness for the sole purpose of acquiring, constructing, or completing permanent improvements the cost of which will be too great to be paid out of the ordinary annual income and revenue of the municipality. The limited authority granted by this act would seem to indicate an

intention on the part of the legislature to withhold the power to borrow money to pay for current expenses, and if it was the only law relating to the subject it would seem very plain that the bond issue in question here is illegal.

But section 866 of the Municipal Incorporation Act of 1883 (Stats. 1883, p. 271) is far more liberal in terms and effect. It is therein provided that municipal corporations of the sixth class may incur a bonded indebtedness in the method here followed whenever the board of trustees shall deem it necessary for the purpose of supplying a deficiency of the funds in the treasury applicable to the payment of any expense which they are empowered to incur in behalf of the municipality. And by section 862 of the same act they are empowered to "lay out, alter, keep open, improve and repair streets, sidewalks, alleys, squares and other public highways, and places within the city or town, and to drain, sprinkle, oil and light the same." In view of this provision, there can be no question as to the power of the board of trustees to incur the expense of purchasing electric lighting from a private company or the expense of the care and maintenance of the streets and public places in the city. And if they can lawfully incur such expenses, it is very clear that section 866 by its terms confers the power to supply any deficiency in the funds applicable to these purposes by the issuance of bonds.

The only question that suggests itself is whether section 866 is still in force,—whether, in other words, it may not have been repealed by the passage of the later act of 1901, in which, as above shown, the power of municipal corporations to incur a bonded indebtedness is limited to the acquisition, construction, or completion of permanent improvements the benefit of which will inure to the future inhabitants of the city or town in contradistinction to those things which are properly deemed a current expense payable out of the revenue of the year in which they are consumed. This is a question of very serious import, which does not seem to have engaged the attention of counsel, and in the absence of argument we are not willing to decide it. We merely direct attention to the fact that here is a general law applicable to all municipal corporations organized under the law of 1883, later in date than that act, and covering the subject of municipal bonds. Such laws, notwithstanding repeals by implication are not favored, have sometimes been held to

operate such repeal of older statutes to which they make no express reference.

We are, however, relieved of the necessity of deciding this question in the present case by reason of the enactment of a curative statute approved March 4, 1907, (Stats. 1907, p. 104,) by which the proceedings in this and all similar cases have been validated.

In the absence of constitutional restrictions the power of the legislature to validate past transactions which it could have authorized in advance is restrained only by the necessity of protecting vested rights. Here are no vested rights to be guarded, and the only constitutional restrictions to which our attention has been called are contained in subdivisions 14 and 18 of section 25 of article IV of the constitution, which forbid the enactment of *special* laws giving effect to invalid deeds, wills, or other instruments, or legalizing, except as against the state, the unauthorized or invalid act of any officer. The answer to the objection based on these provisions is that the act of March 4, 1907, is not a special law. It is a curative act, and of course is retroactive in its operation, applying exclusively to past transactions; but it embraces all municipal corporations, and every case in which not less than two thirds of the qualified electors voting at a special election called for the purpose have approved the proposed issue of municipal bonds. The fact that the law is limited in its application to bonds sold after its passage, and for not less than par, does not render the law special in a constitutional sense. There was an excellent reason for discriminating between such bonds and others that might have been marketed prior to the statute for less than their value, for the very reason that there was a doubt as to their validity.

We do not deem it necessary to discuss this matter more in detail or to cite the cases referred to in the briefs. It is enough to say that there is no constitutional objection to the validating act, and that the proceedings of the plaintiffs in ordering the issue of these bonds, if not originally valid, certainly became valid immediately upon the passage of the act of March 5, 1907. A very instructive opinion of the supreme court of Minnesota in a case closely resembling this, and in which the authorities are extensively reviewed, is reported in *State* v. *Brown,* 97 Minn. 402, [106 N. W. 477].

It is ordered that peremptory writ of mandate issue as prayed.

Henshaw, J., McFarland, J., Sloss, J., and Lorigan, J., concurred.