[Civ. No. 1493.   Second Appellate District.—April 17, 1914.]

## CITY OF VENICE (a Municipal Corporation), Petitioner, v. J. W. LAWRENCE, Jr., Treasurer of the City of Venice, Respondent.

MUNICIPAL BONDS—IRREGULARITIES IN ISSUANCE—CURATIVE STATUTE.—
Irregularities in the proceedings taken in 1912 by the city of Venice in the incurring of an indebtedness and the issuance and sale of bonds for municipal purposes, are cured by the Validating Act of April 4, 1913, entitled "An act to validate municipal bonds, and to provide for the levy and collection of taxes to pay the principal and interest on such bonds." (Stats. 1913, p. 14.)

ID.—VALIDATION OF PAST TRANSACTIONS—POWER OF LEGISLATURE.—
The legislature may validate 'past transactions when it could in advance, without contravening constitutional provisions, have authorized the proceedings taken as a precedent condition to the exercise of municipal power in issuing bonds; in other words, as to all steps which the legislature could, in the first instance, have dispensed with, it may by retroactive statute declare the taking thereof unnecessary.

ID.—BOND ELECTION—SUFFICIENCY OF NOTICE.—A notice of an election to authorize a bond issue which recites that the election is called to vote bonds in the sum of twenty thousand dollars for the construction of an outfall sewer, and which declares that the estimated cost of the improvement is twenty thousand dollars, is not insufficient in failing to state the amount of the proposed indebtedness as required by section 18 of article XI of the constitution.

ID.—ANTEDATING BONDS—EFFECT ON VALIDITY.—Municipal bonds are not rendered illegal by being dated as of a date prior to the election authorizing them.   Under the act of April 4, 1913, validating municipal bonds (Stats. 1913, p. 14), the date of the bonds is immaterial, the only restriction being that it shall not extend over a period of forty years.

ID.—CITY TREASURER—REFUSAL TO SIGN BONDS—INSUFFICIENT REASON.—
A city treasurer cannot justify his refusal to sign municipal bonds upon the ground that the board of trustees may violate their duty by selling the bonds for less than par.

PETITION for Writ of Mandate to be directed to the Treasurer of the City of Venice.

The facts are stated in the opinion of the court.

Byron C. Hanna, for Petitioner.

Crouch & Crouch, for Respondent.

SHAW, J.—Original application for a writ of mandate
to be directed to the respondent requiring him, as treasurer
of the city of Venice, to sign a certain municipal bond in
the sum of five hundred dollars, it being one of forty bonds
of like denomination voted by the electors of said city for the
purpose of constructing an outfall sewer.

It appears from the petition, all the allegations of which
are admitted by a general demurrer interposed thereto, that
on January 22, 1912, the board of trustees of the city of Venice
duly adopted a resolution, approved by its president, whereby
it determined that public interest and necessity demanded
the acquisition and construction of a garbage incinerating
plant, the cost of which was twenty three thousand dollars,
and the construction of an extension to the sewer outfall pipe,
the cost of which was twenty thousand dollars, the cost of
which improvements it was declared would be "too great to
be paid out of the annual income and revenue of the city of
Venice." The resolution contained the following: "The pro-
ceedings for the incurring of said indebtedness and the issu-
ance and sale of bonds thereunder, be conducted in accord-
ance with the provisions of an act of the legislature of the
state of California, entitled, 'An act authorizing the incur-
ring of indebtedness by cities, towns and municipal corpora-
tions for municipal purposes, and regulating the acquisition,
the construction and completion thereof,' (which act became
a law under constitutional provisions without the governor's
approval, February 25, 1901), and in accordance with the
provisions of section 866 of an act of the legislature of the
state of California entitled, 'An act to provide for the organi-
zation, incorporation and government of Municipal Corpora-
tions,' approved March 13th, 1883, and all acts in addition
thereto and amendatory thereof." On February 19, 1912,
an ordinance was duly adopted calling a special election to
be held on April 4, 1912, for the purpose of submitting to
the qualified electors of said city the proposition of issuing
the bonds and reciting the purposes so embodied in the resolu-
tion, for which the indebtedness evidenced by the bonds was

to be incurred; and providing as to the outfall sewer bonds here involved, that they should be of the denomination of five hundred dollars each and bear five per cent interest, one of said bonds to be made payable on the first day of February of each year after the date of their issue. The election was duly and regularly held, and more than two-thirds of the electors voting at the election voted in favor of the proposition.

The only grounds upon which respondent seeks to justify his action in refusing to sign the bond presented for his signature as city treasurer, are: 1. That it was stated in the resolution and ordinance that the proceedings for the issuance of the bonds would be conducted in accordance with two separate acts providing for cities incurring indebtedness in the making of public improvements, the provisions of which acts are inconsistent each with the other, in that, among other things, one authorizes the incurring of an indebtedness only when the estimated cost of the improvements exceeds the ordinary annual income and revenue of the municipality, while the other authorizes the incurring of such indebtedness only in case the amount is in excess of the money in the treasury applicable to the payment thereof; in one the payment of the bonds may extend over a period of forty years, while in the other the time is restricted to twenty years; 2. That the proposed issuance of the bonds is unauthorized in that the board of trustees did not, as required, determine the cost of constructing the improvement to be "too great to be paid out of the ordinary annual income and revenue of the municipality." This claim is based upon the fact that the resolution included not only the construction of an outfall sewer at a cost of twenty thousand dollars, but the acquisition of a garbage incinerating plant at a cost of twenty-three thousand dollars; and the determination was not as to each improvement separately, but declared that the combined cost of the two improvements was "too great to be paid out of the annual income and revenue of the city," omitting the word "ordinary"; 3. The omission of a sufficient statement in the ordinance as to the amount of the indebtedness which it was proposed to incur in the construction of the improvement; 4. That no authority exists for antedating the bonds. The ordinance passed by the board of trustees, pursuant to the authority given, provided that the bonds should be dated

as of February 1, 1912, and bear interest at the rate of five per cent per annum; and, 5. Under the terms of the ordinance the bonds are to extend over a period of more than forty years from their date.

The existence of irregularities in the proceedings inaugurated for conferring authority upon the° board to issue the bonds, may be conceded. Whether of sufficient import to render the proceedings invalid by reason of noncompliance with the statutory provisions under and pursuant to which they were conducted, is immaterial, for the reason that, in our opinion, such defects, in so far as material, were cured by an act of the legislature entitled, "An act to validate municipal bonds, and to provide for the levy and collection of taxes to pay the principal and interest on such bonds," approved April 4, 1913 (Stats. 1913, p. 14). Section 1 of this act provides: "Where in any municipal corporation, proceedings have been taken for the purpose of issuing and selling bonds of such municipal corporation, . . . all such acts and proceedings leading up to and including the issuance of such bonds, if they have heretofore been sold, and all such acts and proceedings heretofore had, although the bonds are not yet sold, are hereby legalized, ratified, confirmed and declared validated to all intents and purposes, and the power of said municipal corporation and of the legislative body thereof, to issue such bonds, is hereby ratified, confirmed and declared, . . . and the bonds hereafter sold shall be the legal and binding obligation of and against the municipal corporation, . . ." Section 3 of the act provides: "This act shall not operate to legalize any bonds which have been sold for less than par, nor to legalize any bonds the issuance of which has not received the assent of two-thirds of the qualified electors of such municipal corporation, voting at an election held for the purpose of determining whether such indebtedness should be incurred, nor to legalize any bonds which mature at a date more than forty years from the time of their issuance." It has been repeatedly held that the legislature may validate past transactions when it could in advance, without contravening constitutional provisions, have authorized the proceedings taken as a precedent condition to the exercise of municipal power in issuing bonds. In other

24 Cal. App.—23

words, as to all steps which the legislature could, in the first instance, have dispensed with, it may by retroactive statute declare the taking thereof unnecessary. (See Dillon on Municipal Corporations, 5th ed., vol. 2, sec. 948; *City of Redlands* v. *Brook,* 151 Cal. 474, [91 Pac. 150].) Indeed, counsel for respondent, notwithstanding the irregularity in the proceedings, concedes the act quoted as sufficient to validate the bonds, except that he contends the notice of the election failed to state the amount of the proposed indebtedness, by reason whereof there was a failure to comply with section 18 of article XI of the constitution, which prohibits the incurring of "any indebtedness or liability in any manner or for any purpose, . . . without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose." And while he concedes that the purpose, as specified in the notice of election, was to vote bonds in the sum of twenty thousand dollars of the denomination of five hundred dollars each for the purpose of constructing an outfall sewer, he insists that the notice did not state in express terms that it was proposed to *incur an indebtedness* of said sum for such purpose. There is no merit in the contention. The notice recited that the estimated cost of the improvement was the sum of twenty thousand dollars and the election was called, as stated in the proceedings, for the purpose of submitting "to the qualified electors of said city the propositions of incurring the said several indebtednesses (that of $23,000 for a garbage plant, and $20,000 for the sewer) for the said several purposes . . . set forth in this resolution." Moreover, as was said in *City of Oxnard* v. *Bellah,* 21 Cal. App. 33, [130 Pac. 701], where a similar point was urged: "It is clear that the authority to issue bonds evidencing a debt was submitted and that the voters directed the issuance thereof, the effect of which would be to create and establish an indebtedness; and it should follow that a proposition to issue bonds evidencing a new and independent indebtedness is a proposition to incur an indebtedness, and comes within the purview of the statute which provides that the proposition of incurring a debt for the purposes set forth in said resolution, and no question other than the incurring of an indebtedness for the purpose, shall be submitted."

Pursuant to the power conferred, the board of trustees adopted an ordinance authorizing the issuance of the bonds, and whereby it was provided that they should be dated February 1, 1912. Respondent insists that thus dating the bonds rendered them illegal for the reason that they would bear interest from a date prior to that upon which the election was held whereby authority to issue them was conferred upon the board. The date of the bond is immaterial, the only restriction being that it shall not extend over a period of forty years. Like a note, the bond would only take effect upon delivery and bear interest from such date. (*Collins v. Driscoll*, 69 Cal. 550, [11 Pac. 244] ; *Bither v. Christensen*, 1 Cal. App. 90, [81 Pac. 670].) Moreover, it appears that the bond in question is sold at par and accrued interest. However this may be, the city treasurer cannot justify his refusal to sign the bond upon the ground that the board of trustees may violate their duty by selling the bond for less than par.

We are of the opinion that the defects and irregularities in the procedure, to which respondent has directed our attention and by reason of which he has refused to sign the bond here involved, are cured by the Validating Act above referred to.

The alternative writ of mandate should, therefore, be made peremptory, and it is so ordered.

Conrey, P. J., and James, J., concurred.