[Civ. No. 13282. First Dist., Div. Two. Sept. 11, 1946.]

CITY OF PACIFIC GROVE, Petitioner, v. JOHN D. IRWIN, as City Clerk, etc., Respondent.

Reginald E. Foster, City Attorney, for Petitioner.

Orrick, Dahlquist, Neff, Brown & Herrington for Respondent.

DOOLING, J.—By this proceeding in mandamus the petitioner city of Pacific Grove seeks to compel the respondent, who is the city clerk of petitioner, to sign certain improvement bonds of said city aggregating $120,000 in face value.

It is undisputed that at a special election called by the city council of said city for that purpose and held on July 10, 1945, more than two-thirds of the voters voting at said election voted in favor of the issuance of such bonds. In the procedure leading up to such election the city council was

governed by the Bond Act of 1901 (Stats. 1901, p. 27, as amended; 2 Deering's Gen. Laws, Act 5178) and the respondent's refusal to sign the bonds is rested upon the claim that the city council failed to take the following steps required to be taken by the provisions of the governing statute: 1. The adoption of a resolution of public interest or necessity; 2. The ordinance calling the election did not state the estimated cost of the proposed improvements; 3. The ordinance calling the election did not provide the manner of holding the election and of voting for and against the indebtedness.

It may be admitted that in respect to these three procedural requirements there was not a literal compliance with the provisions of section 2 of the governing statute, although it might be held (a matter which we are not deciding) that the steps taken by the city council constituted a substantial compliance with the law.

On July 19, 1944, the council by more than a two-thirds vote adopted a resolution accepting the report of a post war planning committee, which report contained the recommendation that the two projects, contemplated to be constructed by the proceeds from the sale of the bonds here in question, be undertaken. This report recited among other matters that "these projects will have to be paid for by bond issues, as our study of the city's post war needs shows that the city has no moneys available in its treasury at this time for any of these projects" and further recited that "we unanimously believe that the first four matters are absolute necessities" (included among the first four matters were the two projects here involved). By its acceptance of this report by resolution so adopted it might be argued that the council by resolution passed by a two-thirds vote of its members did determine that the public necessity demands the construction of these projects and that their cost will be too great to be paid out of the ordinary annual income and revenue of the municipality, thus satisfying the requirements of the statute in those particulars. The report recited the estimated cost of the two projects and it might further be argued that by its action in accepting the report the council adopted these estimates as its own. The statute, it should be noted, requires this estimate to be included in the ordinance calling the election, rather than in the preliminary resolution. Subsequently on May 16, 1945, by more than a two-thirds vote, the council adopted a reso-

lution providing in detail for an election to be held on July 10, 1945, for the purpose of submitting the following propositions to the qualified voters of the city:

"Proposition No. 1

"Shall the City incur a bonded indebtedness of $85,000 for the purchase of a site and for the erection thereon of a new fire house, for the purchase of new fire equipment, and for the installation of a fire alarm system?

"Proposition No. 2

"Shall the City incur a bonded indebtedness of $35,000 for the erection of a new bath house, salt water tub baths, and volley ball courts, at the municipal beach on the site of the present bath house?"

Thereafter, on June 6, 1945, the council by more than a two-thirds vote adopted an ordinance calling said election. The ordinance was not in the same detail as the previous resolution but adopted the resolution by reference in the following language:

"All of the contents of Resolution No. 3756 are hereby adopted and incorporated in this ordinance, the same as if they were a part hereof."

Enough has been recited to show the steps actually taken by the council and the particulars in which the procedure departed from a literal compliance with the requirements of section 2 of the Bond Act of 1901. Whether what was actually done constituted a sufficiently substantial compliance to make the procedure valid under that act need not be decided because we are satisfied that the bond election was validated by subsequent act of the Legislature.

At the special session of the Legislature held at the call of the governor from January 7 through February 19, 1946, Senate Bill No. 13 was enacted and became a law on February 12. (Ch. 17, Stats. 1946, 56th (1st Ex.) Sess.)

The portion of that statute here relevant reads:

"All acts and proceedings heretofore taken by any public body under any law, or under color of any law, for the issuance, sale, or exchange of bonds of any such public body for any public purpose are hereby confirmed, validated, and declared legally effective. This shall include all acts and proceedings of the governing board of such public body and of any person, public officer, board or agency heretofore done or taken upon the question of the issuance, sale, or exchange of such bonds." (§ 5.)

 It is settled law in this state that defects in procedural steps leading to the incurring of bonded indebtedness by municipal corporations and other political subdivisions may be cured by subsequent validating statutes enacted by the Legislature. (*City of Redlands* v. *Brook*, 151 Cal. 474, 478 [91 P. 150] ; *Clark* v. *Los Angeles*, 160 Cal. 30, 43 [116 P. 722] ; *City of Sacramento* v. *Adams*, 171 Cal. 458, 463 et seq. [153 P. 908] ; *Cole* v. *City of Los Angeles*, 180 Cal. 617, 624-5 [182 P. 436] ; *City of Venice* v. *Lawrence*, 24 Cal.App. 350, 353 et seq. [141 P. 406] cf. *Miller* v. *McKenna*, 23 Cal.2d 774 [147 P.2d 531] and the cases cited on p. 781.)

The extent to which such curative legislation is effective has been stated by the Supreme Court as follows in *Miller* v. *McKenna, supra,* 781-2 :

"The legislature may cure irregularities or omissions to comply with provisions of a statute which could have been omitted in the first instance. This rule is quoted from Cooley on Constitutional Limitations, at page 457, as follows: 'If the thing wanted or failed to be done, and which constitutes the defect in the proceedings, is something the necessity for which the legislature might have dispensed with by prior statute, then it is not beyond the power of the legislature to dispense with it by subsequent statute; and if the irregularity consists in doing some act, or in the manner or mode of doing some act, and which the legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by subsequent law.' "

 The constitutional limitation upon the power of municipalities to incur a bonded indebtedness is found in the following language contained in article XI, section 18 of the Constitution of California :

"No county, city, town, township, board of education, or school district, shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose. . . ."

It is beyond argument that the Legislature could have satisfied this constitutional requirement by providing in advance for the precise procedure followed by the city council in calling this particular election, and under the rule last above quoted it may with equal force ratify it after it has been taken. The propositions were clearly put to the voters at an

election held for that purpose and more than two-thirds thereof gave their assent. None of the claimed defects in the steps leading up to the election was jurisdictional in the sense that the Constitution made it mandatory upon the Legislature to require the things to be done which it is claimed were omitted, and the curative statute was therefore effective to validate the election.

The curative act contains the following provision:

"Sec. 7(a) This act shall be limited to the correction of defects, irregularities, omissions, and ministerial errors in complying with statutory requirements which the Legislature originally could have omitted from the law under which such acts or proceedings were taken."

In so providing the Legislature did no more than to declare that it intended to follow the recognized limitations upon its powers. In this case the curative act may properly be applied without exceeding those limitations.

Let a peremptory writ of mandate issue as prayed.

Nourse, P. J., and Goodell, J., concurred.