[Civ. No. 9473. Third Dist. Apr. 18, 1958.]

NORTHRIDGE PARK COUNTY WATER DISTRICT, Petitioner, v. EDWARD M. McDONELL, as Secretary, etc., Respondent.

Kirkbride, Wilson, Harzfeld & Wallace for Petitioner.

Edward M. McDonell, in pro. per., for Respondent.

VAN DYKE, P. J.—Petitioner herein seeks a peremptory writ of mandate to compel respondent to publish and mail an official notice of the sale of general obligation bonds of Improvement District Number 1 of the petitioner district in accordance with an order of the board of directors of said district. Respondent has refused to perform this duty cast upon him by law, basing his refusal on various grounds.

█ Respondent's first contention is that the petitioner district has not been lawfully formed for the reason that notice of the hearing before the Board of Supervisors of Sacramento County of the petition to establish the district and fix the boundaries thereof was published in a newspaper on the thirteenth and sixth days before the hearing, whereas the California Water Code requires publication for at least two weeks before the day when the petition is to be presented to and considered by the board. This contention cannot be sustained. Section 30230 of the Water Code provides that:

"The county clerk of the county containing the proposed district shall publish a notice of a hearing on the formation petition once a week for at least two weeks before the time when the petition is to be presented and considered in at least one, but not to exceed three, newspapers printed and published in the county."

Standing alone, this section might well be construed to require that the first publication take place at least 14 days before the petition is to be presented. However, this construction is rendered improper by the provisions of section 30063 of the Water Code, which section reads as follows:

"Whenever by this division a notice is required to be published for a designated number of weeks or once a week for a designated number of weeks, the notice need be published on only one day of each week and for only the same number of times as the number of weeks designated.

Considering these two sections together and applying section 30063 to the phraseology of section 30230 we have the following situation: The first section quoted requires publication once a week for at least two weeks. The section thus designates the number of weeks of publication and the number of publications in a week. The second section quoted then provides that where a notice is required to be published once a

week for a designated number of weeks, in this instance two weeks, the notice need be published on only one day of each week and for the same number of times as the number of weeks designated, in this instance for two times. Construing the two sections together then, they provide that in forming a county water district there shall be published prior to presentation of the formation petition a notice which shall be published one day each week during the two weeks preceding the date of presentation. This necessarily means that it is not required that the first day of publication must be 14 days prior to the presentation date. The notice can be published on any day of the first week and on any day of the second week preceding presentation. In this case the notice was published on the second day of the first week and on the first day of the second week and that publication complied with the statutory requirements. (See *City of Lindsay* v. *Mack*, 160 Cal. 647, 648 [117 P. 924].)

A discussion of the further contentions of respondent requires a more detailed recital of the various steps taken leading to the organization of the district and to the authorization of the bonds. On January 11, 1956, the County Boundary Commission of Sacramento County approved the boundaries of the proposed Northridge Park County Water District. A petition for incorporation of the proposed district with the proposed boundaries was circulated and signed by the requisite number of qualified signers. On April 23, 1956, the petition was filed with the board of supervisors of the county and that board, on May 27th, ordered that a hearing be held on June 27th. Notice of the hearing was published on June 14th and June 21st. On the date fixed the board heard the petition and those who appeared in support of and in opposition thereto, and considered written protests and requests for exclusion. The requests for exclusion were referred to the county engineer and thereafter the board excluded all property, the owners of which requested exclusion. The matter was then continued until July 18th to determine if it was economically feasible to form a district. At the meeting on that date and after presentation of the county engineer's report the boundaries of the district were so fixed as to include the territory remaining after exclusions and it was ordered that a resolution fixing the boundaries and calling an election be prepared for adoption. There followed several postponements and on August 15, 1956, the board further considered

the entire matter and determined that the petition and the notice were genuine and sufficient and complied with all other requirements for the formation of county water districts. The board considered further that certain lands it had earlier intended to include would not in fact be benefited by the formation and operation of the district and those lands were excluded. The boundaries of the district as so modified were declared by resolution and it was ordered that the organization election should be held October 30th. A meeting of the board was held on October 3d and at this meeting a resolution was adopted purporting to vacate the orders made and the resolutions adopted on August 15th. One week later and at another meeting the board took action purporting to set aside the resolutions of October 3d. At the same meeting, the board adopted a resolution purporting to amend the resolutions of August 15th as to the boundary descriptions for the district and further ordering that, except as so amended, the resolutions of August 15th should remain in full force and effect. Notice of the election to be held October 30th was published on October 18th and October 25th. The election was held as noticed. Three hundred and sixty-three votes were cast in favor of formation of the district and 67 votes were cast in opposition. Thereafter, the district was declared formed, its name was adopted, the Secretary of State issued his certificate reciting it had been duly incorporated, the directors who had been elected received their certificates of election and in due course took office. The respondent was elected secretary of the board of directors and since that time the district has functioned as a county water ,district.

On October 15, 1957, and after the district had, as stated, been functioning as such for almost a year, there was filed with the board of directors of the district, 43 petitions for annexation of territory to the district. Notice of hearing of these petitions on October 31st was published October 17th and October 24th. On the hearing date the board of directors declared the area encompassed in the annexation petitions to be annexed to the district, but declared further that the area should be included in what had become Improvement District Number 1 within the water district. On September 16, 1957, the board of directors adopted a resolution declaring the necessity of incurring bonded indebtedness in connection with the acquisition of a water supply and of storage and transmission facilities. A hearing was held and a resolution was thereafter adopted by the directors determining that a portion of the

district designated as Improvement District Number 1 would be benefited by the proposed works. A further resolution was adopted, ordering that the proposition for the issuance of the bonds for the purposes stated be submitted to the electors and the election was set for November 5th. Notice thereof was duly given. Ballots and precinct cards were mailed to the voters and all the election procedures were admittedly followed. The election was held and it appeared that 394 votes had been cast in favor of the bond issue and 155 as opposed. Included in the votes cast were votes of 51 persons residing in the area which it was then proposed to annex to the district as a part of said Improvement District Number 1. On December 3, 1957, the board of directors adopted a resolution ordering the issuance of $1,000,000 worth of bonds and calling for bids thereon. The board ordered the district's secretary, respondent herein, to make the required publication. This he refused to do and these proceedings were then initiated.

Respondent contends that the proposed bonds will not be valid for the reason that there was insufficient publication of the notice of election on the issue of district formation. This contention is in substance the same as that which we have discussed in relation to respondent's contention that there was insufficient publication of the date of hearing of the original formation petition. Section 30293 of the Water Code provides that the county clerk shall give notice of the formation election by publishing notice "once a week for at least two weeks prior to the formation election." This section also is subject to the provisions of section 30063 of the Water Code which we have hereinbefore quoted. The notice was published on the twelfth and fifth days preceding the election. Here again we hold, for the reasons heretofore given, that this notice complied with the statutory requirements since it was published one day in each of the two weeks preceding the election.

Respondent contends that the bonds, if issued, will be invalid because unqualified persons were permitted to vote in the bond issue election. It appears that electors residing in the area proposed to be added to the district and to Improvement District Number 1 therein were permitted to vote although those lands had not yet been admitted. Thus there were 51 votes cast by persons ineligible to vote. Three hundred and ninety-four votes were cast in favor of the bonds and 155 were cast against them. The bonds received a majority of all valid votes cast. Under such circumstances, nothing more being shown, the bonds were validly approved. As said

in 29 Corpus Juris Secundum, Elections, page 322, section 219:

"While it is well settled that where enough illegal votes are cast at an election to change the result or leave it in doubt the election is void, yet it is equally well settled that the result of an election will not be disturbed because of illegal votes received unless the aggregate of such votes would change the result. If the result can be ascertained by eliminating the illegal votes the election will be upheld."

■ Respondent contends the bonds, if issued, will be invalid for the reason that the lands admitted to the district after formation and added to Improvement District Number 1 within the district were not legally admitted. This contention is based upon the following facts: Petitions for annexation were received by the board on October 15, 1957. A hearing on these petitions was set for October 31st following. After this hearing the board declared the area described in the petitions to be included, but imposed upon their inclusion the condition that they be made part of Improvement District Number 1. Section 32471 of the Water Code provides that: "If any conditions are prescribed by the board, it shall adjourn the hearing for not less than thirty nor more than sixty days." No such adjournment was ordered, probably because each petition contained an express consent that the lands be included in Improvement District Number 1 and an express waiver of the code requirement of adjournment. Section 32472 of the Water Code provides that if, during adjournment, protests are filed to inclusion, under the prescribed conditions, by a majority in number of the holders of title to the land proposed to be included, representing a majority in acreage of said land, the board shall dismiss the petition; otherwise the land shall be included subject to the conditions. It is apparent that the adjournment provision is to enable petitioners for inclusion to object to the proposed conditions and for no other purpose. This statutory provision being for their benefit, they may waive it, as they did. (*Allen* v. *Hance*, 161 Cal. 189 [118 P. 527], *Remillard* v. *Blake & Bilger Co.*, 169 Cal. 277, 283 [146 P. 634, Ann.Cas. 1916D 451].)

■ Respondent contends that the findings of the board of supervisors as to the benefits which would be enjoyed by the land proposed to be included in the district and the subsequent decision of the board including and excluding lands are not supported by the evidence. The contention cannot be sustained. Factually, the record shows substantial evidence in

support of the challenged findings. The minutes of the board indicate that a number of persons appeared at the formation hearing and were heard by the board; that others sent communications addressed to the issue before the board; that the county engineer appeared and reported the results of the investigations he had made on the feasibility of the proposed district. There is, of course, a presumption that in all matters the board acted pursuant to law and that their findings were made after the taking of pertinent evidence. There is a recital that the board in all matters concerning formation considered relevant and competent testimony. The record here presents nothing to the contrary. Factually, therefore, this contention of respondent cannot be sustained.

 Respondent contends that the board of supervisors called the formation election for a date beyond the limit fixed by section 30291 of the Water Code which requires that the election shall be held not less than 50 nor more than 60 days from the date of final hearing of the formation petition. This election was called and held beyond that limit. But it appears that, in addition to the statutory notice of the day of the election and of the purposes thereof, there was newspaper publicity in the area, public meetings were held and in addition thereto sample ballots and polling place cards were mailed as required by law. No claim is made that the election was not properly and honestly conducted. If an election has been honestly and fairly conducted and no one has been injured by the manner in which the preliminary steps leading thereto have been taken no reason exists for declaring it invalid. (*In re East Bay Municipal Utility District Water Bonds of 1925*, 196 Cal. 725 [239 P. 38]; see also *Board of Supervisors* v. *Rechenmacher*, 105 Cal.App.2d 39 [232 P.2d 514]; *City of Crescent City* v. *Griffin*, 31 Cal.App.2d 133 [87 P.2d 414]; *Hayes* v. *Kirkwood*, 136 Cal. 396 [69 P. 30].) We hold the election to have been validly conducted.

 Finally, respondent contends that the board of supervisors lost jurisdiction to call the formation election by reason of what occurred, as hereinbefore related, after the adoption of the August 15th resolutions declaring the district formed and fixing the boundaries subject to electoral approval. It appears that after passing the resolution of August 15th and without any formal continuance of the matter before the board insofar as formation proceedings were concerned, the board on October 3d purported to rescind the August 15th resolution, and later, and on October 10th, purported to rescind the

rescinding resolution and to make certain changes in the district boundaries. For what reason the board passed the resolution of October 3d does not appear in the record, but in any event the proceeding constituted nothing more than irregularity not jurisdictional in character which it was competent for the Legislature to validate by curative legislation, which subject we next discuss.

In 1957, the Legislature passed two acts known respectively as the first and the second validating acts of 1957. (Stats. 1957, chaps. 133 and 134.) Each of these acts, in section 1 thereof, includes county water districts in its definition of the term "public body." Section 2 in each of said acts provides:

"All public bodies heretofore organized or existing under, or under color of, any law are hereby declared to have been legally organized and to be legally functioning as such public body. Every such public body shall have all the rights, powers, and privileges, and be subject to all the duties and obligations of such a public body regularly formed pursuant to law."

Section 3 of each of said acts provides:

"The boundaries of every public body as heretofore established, defined, or recorded, or as heretofore actually shown on maps or plats used by the assessor, are hereby confirmed, validated, and declared legally established."

Section 5 of each of said acts provides, in part:

"All acts and proceedings heretofore taken by or on behalf of any public body under any law, or under color of any law, for the authorization, issuance, sale, or exchange of bonds of any such public body for any public purpose are hereby confirmed, validated, and declared legally effective. . . ."

The validating acts contain the following (§ 6 of each act):

"(a) The foregoing provisions of this act shall operate to supply such legislative authorization as may be necessary to validate any such acts and proceedings heretofore taken which the Legislature could have supplied or provided for in the law under which such acts or proceedings were taken.

"(b) The foregoing provisions of this act shall be limited to the validation of acts and proceedings to the extent to which the same can be effectuated under the State and Federal Constitutions."

With the possible exception of the objection to the contention of respondent, based upon the publication of notice of the day for the presentation of the formation petitions to the

board of supervisors, all of the defects claimed to have occurred in the proceedings thereafter to and including the resolution ordering the issuance of bonds after the bond election are within the validating and curative effects of the two validating acts referred to. In *Chase* v. *Trout*, 146 Cal. 350, at pages 358 and 359 [80 P. 81], the principles concerning the scope and effect of curative legislation such as is presented here was stated as follows:

". . . In *Ensign* v. *Barse*, 107 N.Y. [329] 338 [14 N.E. 400, 15 N.E. 401], the court says, speaking of a subsequent validating act: 'If the thing wanting or omitted which constitutes the defect is something the necessity for which the legislature might have dispensed with by prior statutes, or if something has been done, or done in a particular way, which the legislature might have made immaterial, the omission or irregular act may be cured by a subsequent statute.' . . . The proposition is thus stated by other authorities: 'Where directions upon the subject might originally have been dispensed with, or executed at another time, irregularities arising from neglect to follow them may be remedied by the legislature.' (*Williams* v. *Supervisors*, 122 U.S. [154] 163-164 [7 S.Ct. 1244, 30 L.Ed. 1088].) . . . A curative statute or clause may preclude all investigation except 'the single inquiry whether, in the case presented, the effect of applying the statute is to deprive the party of his property without due process of law.' "

The principles above enunciated in *Chase* v. *Trout* have been confirmed repeatedly in succeeding California authorities including *City of Fairfield* v. *Hutcheon,* 33 Cal.2d 475 [202 P.2d 745].

The bonds when issued will be valid. Let the peremptory writ issue.

Schottky, J., and Warne, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.