[Civ. No. 18400.   First Dist., Div. Two.   Nov. 17, 1958.]

CITY OF BURLINGAME, Petitioner, v. HERBERT K. WHITE, as City Clerk, etc., Respondent.

Burress Karmel, City Attorney, for Petitioner.

Kirkbride, Wilson, Harzfeld & Wallace for Respondent.

MARTINELLI, J. pro tem.*—Petitioner, city of Burlingame, a municipal corporation and general law city, seeks a writ of mandamus to compel the respondent, city clerk of the city of Burlingame, to cause bonds in the principal amount of $32,000 to be lithographed, printed or engraved as prescribed by resolution of the city council.

The facts are agreed. Ordinance Number 670 calling a special municipal election, pursuant to the Municipality Bond

* Assigned by Chairman of Judicial Council.

Act of 1901 (Gov. Code, §§ 43600-43638), required under section 43608 of the Government Code was duly passed. The relevant portions of that ordinance, in order, read as follows:

"Section 1. That a Special Municipal Election be, and it is hereby ordered and directed to be, held in said City of Burlingame, on Tuesday, the eighth day of April, 1958, at which election shall be submitted to the qualified electors of said City the question of incurring bonded indebtedness by said City for the objects and purposes set forth in the following propositions, Nos. 1 and 2, respectively, as follows:

"PROPOSITION No. 1

"Shall the City of Burlingame incur a bonded indebtedness in the principal amount of $725,000.00 in accordance with the provisions of the Ordinance calling the election at which this proposition is submitted for the object and purpose of the acquisition, construction and completion of storm drainage facilities comprising culverts, storm drainage, collection system, conduits, pipelines, manholes, catch basins, grading, fills, channel lining, lands, easements, rights-of-way and other works, property or structures, including removal or replacement of existing sanitary sewers or portions thereof, as necessary or convenient, for the improvement of the storm drainage system of the City of Burlingame?

"                 .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"a. Construction and completion of Oak Grove
    Avenue storm drainage interceptor channel. $590,400
  b. Construction and completion of Lincoln
    Avenue storm drainage interceptor channel.   77,600
  c. Construction and completion of improve-
    ments to Mills Creek storm drainage channel.    2,000
  d. Improvements, including lining, to the storm
    drainage channels and system of City of
    Burlingame ...........................   25,000
                                            _____
    TOTAL ............................$725,000

"                 .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"That the amount of indebtedness proposed to be incurred for the improvements mentioned in each of the above-described propositions is the amount therein stated, severally and respectively, which improvements are to be made for the objects and purposes therein stated, severally and respectively; and the total amount of indebtedness to be incurred at said special election is and will be the aggregate of the

amounts stated in all of such proposals which are accepted by the voters at said election.

"  . . . . . . . . . . . . . .

"Section 5. That said Special Municipal Election hereby ordered and called shall be, and is hereby, consolidated with the general municipal election to be held in said City of Burlingame on April 8, 1958, as required by law and pursuant to the resolution of the City Council of the City of Burlingame calling said election and consolidating the election precincts, and the notices given or to be given pursuant thereto . . .

"  . . . . . . . . . . . . . .

"Section 7. The ballots to be used at said special Municipal Election shall, in addition to all other matter required by law, have printed thereon the following:

"PROPOSITION No. 1

"Shall the City of Burlingame incur a bonded indebtedness in the principal amount of $725,000.00 in accordance with the provisions of the Ordinance calling the election at which this proposition is submitted, for the object and purpose of the acquisition, construction and completion of storm drainage facilities comprising culverts, storm drainage collection system, conduits, pipelines, manholes, catch basins, grading, fills, channel lining, lands, easements, rights-of-way and other works, property or structures, including removal or replacement of existing sanitary sewers or portions thereof, as necessary or convenient, for the improvement of the storm drainage system of the City of Burlingame?"

The respondent city clerk asserts that he is bound by the estimated costs of the items listed; that the fact that the total cost for all items was specified at $725,000 is not governing since the actual total was $695,000.

Petitioner contends that the items, when added together, total the amount of $695,000, although the actual total shown in the ordinance, and on the ballot was $725,000; that the discrepancy between the individual items and the total amount was due to a patent error in the figures set forth after the description of the acquisitions and improvements, in that the amount of $25,000 set forth in item (d) should have been $55,000 in said ordinance as indicated by the proposition therein stated, and Resolution Number 7-58 of Preliminary Determination.

A special municipal bond election, pursuant to the Municipality Bond Act of 1901 (Gov. Code, §§ 43600-43638), con-

solidated with the general municipal election, was duly held on April 8, 1958. One of the purposes of the general election was to determine the following measure on the ballot submitted to the voters:

"DRAINAGE BONDS: Shall the City of Burlingame incur a bonded indebtedness in the principal amount of $725,000.00 in accordance with the provisions of the Ordinance calling the election at which this proposition is submitted for the object and purpose of the acquisition, construction and completion of storm drainage facilities comprising culverts, storm drainage collection system, conduits, pipelines, manholes, catch basins, grading fills, channel lining, lands, easements, rights-of-way and other works, property or structures, including removal or replacement of existing sanitary sewers or portions thereof, as necessary or convenient, for the improvement of the storm drainage system of the City of Burlingame?"

It is alleged in the petition that the election was duly held in all respects in the time, form and manner required by law, and that thereafter the council canvassed the vote and determined that 2,677 votes were cast in favor of Proposition Number 1, that 1,166 votes were cast against the proposition and that more than two-thirds of the electors voting on the proposition voted for it; that thereafter the council provided by resolution for the issuance of $693,000 principal amount of Burlingame Drainage Bonds—First Division, and the sale of said bonds was awarded by resolution adopted June 15, 1958; that thereafter, and on July 7, 1958, the council adopted its Resolution Number 42-58 providing for the issuance of $32,000 principal amount of Burlingame Drainage Bonds of 1958, Second Division; that said amount of $32,000 represents the difference between the sum of $693,000 already sold and the sum of $725,000 authorized; that the respondent clerk has refused to cause the bonds of the second division in the amount of $32,000 to be lithographed, printed or engraved as ordered by the council, solely upon the grounds that, in the estimate of costs of the acquisitions and improvements contained in Ordinance Number 670 (the ordinance calling the election), the specific items of estimated costs, when correctly added together, total the sum of $695,000, whereas, the total specified in the resolution of preliminary determination, Ordinance Number 670, and on the ballot, is $725,000.

It is not necessary, however, to decide the question raised by the respondent clerk, for we have concluded that the Second Validating Act of 1958 (Stats. 1958, 1st Extra Ses-

sion, ch. 20), which became effective on July 23, 1958, supplied the necessary legislative authorization for the issuance of the bonds in question.

The portion of that statute here relevant reads:

"All acts and proceedings heretofore taken by or on behalf of any public body under any law, or under color of any law, for the authorization, issuance, sale, or exchange of bonds of any such public body for any public purpose are hereby confirmed, validated, and declared legally effective. This shall include all acts and proceedings of the governing board of such public body and of any person, public officer, board or agency heretofore done or taken upon the question of the authorization, issuance, sale, or exchange of such bonds."

■ In the case of *City of Pacific Grove* v. *Irwin*, 76 Cal. App.2d 46 at page 49 [172 P.2d 357], this court said:

"It is settled law in this state that defects in procedural steps leading to the incurring of bonded indebtedness by municipal corporations and other political subdivisions may be cured by subsequent validating statutes enacted by the Legislature. [Citations.]

"The extent to which such curative legislation is effective has been stated by the Supreme Court as follows in *Miller* v. *McKenna, supra,* 781-782 [23 Cal.2d 774 (147 P.2d 531)]:

" 'The Legislature may cure irregularities or omissions to comply with provisions of a statute which could have been omitted in the first instance. This rule is quoted from Cooley on Constitutional Limitations, at page 457, as follows: "If the thing wanted or failed to be done, and which constitutes the defect in the proceedings, is something the necessity for which the Legislature might have dispensed with by prior statute, then it is not beyond the power of the Legislature to dispense with it by subsequent statute; and if the irregularity consists in doing some act, or in the manner or mode of doing some act, and which the Legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by subsequent law." '

"The constitutional limitation upon the power of municipalities to incur a bonded indebtedness is found in the following language contained in article XI, section 18 of the Constitution of California:

" 'No county, city, town, township, board of education, or school district, shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the

income and revenue provided for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose. . . .'

". . . The propositions were clearly put to the voters at an election held for that purpose and more than two-thirds thereof gave their assent. None of the claimed defects in the steps leading up to the election was jurisdictional in the sense that the Constitution made it mandatory upon the Legislature to require the things to be done which it is claimed were omitted, and the curative statute was therefore effective to validate the election."

Section 43610 of the Government Code provides that the ordinance shall recite the estimated cost of the public improvements. It is to be noted that this provision neither requires the specification or breaking down of individual items within the category of drainage facilities, nor their corresponding cost estimates. (See *Clark* v. *City of Los Angeles*, 160 Cal. 30 at 43 [116 P. 722]; *Cary* v. *Blodgett*, 10 Cal.App. 463 at 469 [102 P. 668]; *Williams* v. *City of Stockton*, 195 Cal. 743 at 756 [235 P. 986].)

The curative act contains the following provision:

"The foregoing provisions of this act shall operate to supply such legislative authorization as may be necessary to validate any such acts and proceedings heretofore taken which the Legislature could have supplied or provided for in the law under which such acts or proceedings were taken."

In this case the curative act may properly be applied without exceeding those limitations. We are satisfied that the bond election was validated by subsequent act of the Legislature, although it might be held that the steps taken by the city council constituted a substantial compliance with the law. (*City of Fairfield* v. *Hutcheon*, 33 Cal.2d 475 [202 P.2d 745].)

Also applicable to the instant case is the following language from *City of Crescent City* v. *Griffin*, 31 Cal.App.2d 133 [87 P.2d 414]: "A reading of the ordinance . . . leads us to conclude that no elector could have been prejudiced or deceived by reason of the situation urged by respondent, and we therefore hold that this objection is untenable." (P. 141.)

"If any of the objections raised were such as would result in misleading the electors, or placing upon them a burden which they did not understand they were assuming at the time of the election, we would not hesitate to uphold them, but as we have pointed out, such is not the case here." (P.

143.) (See *Northridge Park County Water Dist.* v. *McDonnell* (1958), 159 Cal.App.2d 556, 563 [324 P.2d 102].)

In view of the foregoing we conclude that petitioner is entitled to a writ of mandamus directing respondent clerk to cause said bonds in the principal amount of $32,000 to be lithographed, printed or engraved as prayed for in its petition.

Let the writ issue.

Kaufman, P. J., and Draper, J., concurred.