TERRELL, Justice.
Pursuant to Chapter 130, Florida Statutes, F.S.A., the Board of County Commissioners, Sarasota County, adopted a resolution providing for the issuance of bonds of the county for the purpose of enlarging and improving the county hospital known as Sarasota Memorial Hospital, including the acquisition of necessary land and equipment. The resolution further provided for a special election to be held March 26, 1963, simultaneously with the special state and county election to be held on the same day for the purpose of submitting to the qualified electors of the county who are freeholders the question of approving or disapproving the issuance of said bonds.
As will be seen by § 100.211, Florida Statutes, F.S.A., the resolution required that the notice of said special bond election be published in the Sarasota-Herald Tribune at least once each week for four consecutive weeks before said election, the date of the first publication thereof to be at least thirty days before the election. The notice of said special bond election was published in the Sarasota-Herald Tribune on February 19 and 25 and on March 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25 and 26, 1963.
Said bond election was held simultaneously with the special state and county election on March 26, 1963. The supervisor of registration certified that there were 25,129 registered electors who were freeholders qualified to vote in the special bond election, including 3,406 who qualified at the polls under subsection (2) (d) of § 100.241, Florida Statutes, F.S.A., 14,379 being a majority of the freeholder electors qualified to vote, voted in said bond election. There were 11,091 votes cast for the issuance of said bonds and 3,288 votes were cast against the issuance of said bonds.
March 27, 1963, the board of county commissioners canvassed the said election returns and adopted a resolution declaring that the issuance of the bonds had been approved. The said resolution approved, ratified and confirmed the publication of the notice of the said bond election as done in the Sarasota-Herald Tribune on the dates recited therein. May 7, 1963, the board of county commissioners adopted a resolution providing for issuance of the hospital bonds of 1963, as provided in the original resolution.
*545 At its 1963 session, the Legislature of the State of Florida approved Chapter 63-1905 (House Bill 788), effective May 14, 1963, ratifying, validating and confirming all acts and proceedings theretofore had and taken in connection with said bond election on March 26, 1963, including the publication of notice of the election, and declaring the bond election to be legal and valid in all respects.
May 2, 1963, Sarasota County filed its petition to validate the said bonds. The state attorney on May 21, 1963, was served with copy of the petition to validate, the notice and order to show cause, the said notice to show cause having been published in the Sarasota News May 22 and 29 and June 5, 1963. The state attorney filed answer to the petition June 1, 1963, and hearing was held June 10, 1963. On due consideration of the issues made by the complaint and answer the chancellor entered his final decree validating the bonds. This appeal is from the final decree so entered.
The first question presented is whether or not the publication of the Sarasota-Herald Tribune on February 19 and 25 and on March 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25 and 26, 1963, of the notice of the special bond election held on March 26, 1963, was legally sufficient.
Appellant contends that the chancellor was in error in giving an affirmative answer to this question. State ex rel. Pope v. Shields, Fla.App.1962, 140 So.2d 144, is relied on to support this contention. It is sufficient to say that we do not think the last cited case is determinative of the issues in this case. It was controlled by a different state of facts and circumstances and then there are other good reasons which are not necessary to discuss.
Section 100.211, Florida Statutes, F.S.A., requires that at least thirty days notice of any county bond election be given by publication in a newspaper published in the county, and that “The publication shall be made at least once each week for four consecutive weeks during the thirty days’ period.”
The publication in question was first made thirty-five days before the election and was made once each week for five weeks before the election, the first two weeks of the period of publication and the last three weeks. In fact, in the last three weeks, publication was made every day for fifteen days. However, on account of a cause which the publisher has not been able to determine, one publication of the formal notice was not made during the week of March 4. To compensate for failure of notice during the week beginning March 4, the following proceedings as shown by the record were had:
“But news items concerning the election appeared in the Sarasota Herald-Tribune twice during the week of March 4 — on March 5 and 6 — and three times during the week of March 4 in the Sarasota Journal, the afternoon edition of the Herald-Tribune on March 4, 5 and 6 (Tr. 73 & 74); a brochure was mailed to every registered freeholder on March 8, followed by two additional brochures on March 15 and 22 (Tr. 65-70 inclusive); and during the final ten days before the election an intensive campaign of radio and television coverage was conducted, paid display advertisements were inserted in several newspapers, and a telephone campaign was carried on to alert the electors. As an additional factor, the bond election was held simultaneously with the special State and County election held on the same day at the same polling places. It is safe to say that few special elections have been more widely advertised or commanded more interest than this one, as was shown by the fact that without a special registration of freeholders 14,379 of 25,129 qualified freeholder electors, or 57.2% participated and voted on the issuance of the bonds, and the bond issue was approved by 11,091 or 77% of those participating.”
*546 In view of the fact that the approval of the bonds was carried by a very substantial majority, that no one claimed that he was denied the right to vote, where no fraud was charged and no one qualified to vote was prevented from exercising that privilege, we think the statute was substantially complied with and that notice of said election was essentially met, and was legally sufficient.
The following cases are not in every respect on all-fours with the case at bar but they approve this view: State v. Port St. Joe, Fla.1950, 47 So.2d 584; Baldwin v. State, Fla.1949, 40 So.2d 348, State ex rel. Robinson v. North Broward Hospital Dist., 95 So.2d 434; Carn v. Moore, 1917, 74 Fla. 77, 76 So. 337; McLoughlin v. City of Prescott, 1931, 39 Ariz. 286, 6 P.2d 50; Ratliff v. State, 79 Old. 152, 191 P. 1038; Sonoma Co. v. Sanborn, 1934, 1 Cal.App.2d 26, 36 P.2d 419; Harrison v. Board of County Commr’s., 1948, 68 Idaho 463, 198 P.2d 1013; Neal v. Board of Supr. of Clarke County, 1948, 243 Iowa 723, 53 N.W.2d 147; Hulan v. City of Detroit, 1924, 229 Mich. 273, 200 N.W. 980; State ex rel. Board of Education v. Maxwell, 1945, 144 Ohio St. 565, 60 N.E.2d 183; Phillips v. City of Rock Hill, 1938, 188 S. C. 140, 198 S.E. 604, 119 A.L.R. 656; State v. Quarterly Co. Crt., 1961, 209 Tenn. 153, 351 S.W.2d 390; Hendricks v. School Dist. #1, 1932, 44 Wyo. 204, 10 P.2d 970.
The second and only other question presented is as follows: Did the enactment into law of House Bill No. 788 by the 1963 session of the Florida Legislature cure any and all defects in the publication of notice of the special bond election held on March 26, 1963, so as to make said bond election legal and valid in all respects?
House Bill No. 788 provides:
“All acts and proceedings heretofore had and taken in connection with the freeholder election held in Sarasota County, Florida, on March 26, 1963, including the publication of the notice of such election, to authorize the issuance of bonds of Sarasota County, Florida, for the purpose of providing funds for enlarging and improving the county hospital known as Sarasota Memorial Hospital are hereby ratified, validated and confirmed and said freeholder election is declared to be legal and valid in all respects.”
The general rule is that the legislature can pass a curative law legalizing any act or proceeding that it had the power to authorize in the first place. Gainesville v. Board of Control, Fla.1955, 81 So.2d 514; Paramount-Gulf Theatres v. Pensacola, Fla.1952, 62 So.2d 431; Middleton v. St. Augustine, 42 Fla. 287, 29 So. 421; Taylor v. Tenn., Etc., & Inv. Co., 1916, 71 Fla. 651, 72 So. 206; Givens v. County of Hillsborough, 1903, 46 Fla. 502, 35 So. 88; Hillsborough County v. Henderson, 1903, 45 Fla. 356, 33 So. 997; City of Pacific Grove v. Irwin, 1946, 76 Cal.App.2d 46, 172 P.2d 357.
From reading these decisions, it is perfectly apparent that if there were any defects in the publication of notice of the bond election in Sarasota County held March 26, 1963, the enactment of House Bill No. 788, Session of 1963, cured any and all such defects so as to make the bond election legal and valid in all respects. It is appropriate to point out that no one appeared and complained when the validation proceeding was in progress. They should not be permitted to do so now. No defect charged in the law under review was such as the legislature did not have the power to review and validate.
The decree of the court below dated June 10, 1963, validating the Hospital Bonds of 1963 of Sarasota County, dated June 1, 1963, and proceedings are hereby affirmed.
Affirmed
DREW, C. J., and THORNAL, O’CON-NELL and HOBSON (Ret.), JJ., concur.