[L. A. No. 6762. In Bank.—April 14, 1922.]

## PETER L. FERRY, Respondent, v. WILLIAM O'BRIEN et al., Defendants; WINIFRED F. MARR, Defendant and Appellant.

[1] STREET LAW—VROOMAN ACT — RESOLUTION OF INTENTION — DE-SCRIPTION OF WORK.—An assessment for street work under the Street Improvement Act of 1885, commonly known as the "Vrooman Act," is void where the resolution of intention does not include in its description all of the work on account of which the assessment is made; and the fact that the plans and speci-fications include more work than that which is directly described in the resolution of intention is not sufficient to extend the terms of the resolution so as to include such additional work. Such plans and specifications when prepared must conform to and be consistent with the description in the resolution of inten-tion.

[2] ID.—REASSESSMENT—SECTION 12¼, VROOMAN ACT.—Where the original assessment is void, a reassessment of property for street improvement in compliance with the provisions for re-assessment as stated in section 12¼ of the Street Improvement Act of 1885 (Vrooman Act) is valid.

[3] ID.—POWER OF LEGISLATURE TO AUTHORIZE STREET IMPROVEMENT —NOTICE.—Whether street improvement shall be done or not is a question solely of public interest, but whether private prop-erty shall or shall not be assessed therefor is a matter which directly touches upon the rights of the owner of the property; and therefore the legislature has power to authorize an order for street improvement without notice, but it has not power to authorize an assessment to be made without notice, whereby the property owner is given an opportunity to object to the assessment and to be heard upon his objection or protest.

[4] ID.—FORECLOSURE OF LIEN—PLEADING — BONDS — APPEAL.—In an action to foreclose the lien of a street assessment, where the evi-dence showed that the plaintiff was justly entitled to the fore-closure of his lien, a judgment for him will not be reversed on appeal by reason of the fact that the complaint did not allege that no bond had been issued for the assessment, or that the owner of the property assessed ordered that no bond should issue therefor, where it is apparent that the error complained of by the trial court in overruling an objection to the intro-duction of evidence on the ground that the complaint did not state a cause of action, did not result in any miscarriage of justice.

APPEAL from a judgment of the Superior Court of Los Angeles County. Leslie R. Hewitt, Judge. Affirmed.

The facts are stated in the opinion of the court.

Winifred F. Marr, *in pro. per.,* for Appellant.

Hartley Shaw for Respondent.

RICHARDS, J., *pro tem.*—The following portion of the opinion of the district court of appeal for the second appellate district, division one, covering the facts of the case, and decisive of the main issues arising upon the trial and upon appeal, is hereby adopted as the opinion of this court:

"This is an action to foreclose a lien claimed by reason of an assessment for street work alleged to have been done under contract pursuant to the procedure outlined in the street work act of 1885, commonly known as the 'Vrooman Act' [Stats. 1885, p. 147]. The defendant Winifred F. Marr appeals from the judgment.

"On the eighth day of February, 1915, the board of trustees of the city of Glendale adopted a resolution declaring its intention to order improvements as follows: That a bridge be constructed upon a portion of the roadway of Canada boulevard, across the Verdugo Wash, in that city; also that a channel 50 feet in width be graded in the Verdugo Wash *from a point 150 feet* northeasterly from the center point of the bridge to a point 585 feet southwesterly from the center point of the bridge; also that the banks of said channel be protected by levees, 'said grading, protection work and bridge to be constructed in accordance with plans Number 171 and 172 and special specifications adopted for said work by said board of trustees.' The resolution declared that the contemplated work was of more than local or ordinary public benefit, and expressed the intention of the board to create an assessment district, including the territory benefited by the improvement and to be assessed to pay the costs and expenses thereof. It was stated in the resolution that the plans, profiles and specifications therein mentioned were thereby referred to 'for a more particular description of said work and made a part hereof.' It was also declared to be the intention to issue serial bonds representing the as-

sessments in accordance with the provisions of the Street Bond
Act of 1893 [Stats. 1893, p. 33] as then in force. The sub-
sequent resolution ordering said work, and the notices there-
of, followed the resolution of intention in its statement that
said channel was to commence at 'a point 150 feet north-
easterly' from the center point of said bridge. The plans
referred to in said resolution of intention showed that said
channel was to commence '*at a point 1500 feet northeasterly
from the center point of said bridge.*' The resolution was
duly published, and thereafter it was ordered that the work
be done. Notices inviting bids having been duly published,
the contract for the work was entered into by plaintiff's as-
signor as contractor, and the work was performed in ac-
cordance with the terms of the contract. That contract pro-
vided for the channel work to commence at a point 1,500
feet northeasterly from the center point of the bridge. In
other words, the channel contracted for extended to and in-
cluded a distance of 1,350 feet, as indicated in the plans,
notwithstanding the fact that this portion of the work had
been omitted from the resolution of intention and from the
resolution ordering the work, and from the notices thereof.
The work described in the contract having been completed
and accepted, an assessment was made and a diagram and
warrant were issued in the usual form and recorded on No-
vember 26, 1915. After demand made for payment of
assessments, as required by law, a return was made and re-
corded in due form. The assessment shown against the prop-
erty of appellant was the sum of $81.60, and the return
showed the same to be wholly unpaid.

"On the twenty-first day of February, 1916, pursuant to
petition filed by and on behalf of the contractor and its
assignee, the board of trustees duly adopted a resolution
whereby it found and declared that said assessment was in-
valid for the reason that the ordinance and notices were
incorrectly passed, published and given, as set forth in said
petition, and set aside said former assessment and ordered
the superintendent of streets to issue a new assessment and
warrant for the costs and expenses of the said work which
had been theretofore done, describing said work according to
the description contained in the contract, and directed that
a reassessment be made on the land in the district therein
described, which the board by said resolution found and

declared to be that actually benefited by said improvement, and which was the same district described in the original resolution of intention; and further directed that said reassessment be based upon the special and peculiar benefit to the respective lots, pieces, and parcels of land assessed at the time of making the reassessment, and that this total amount should not exceed the total amount of the original assessment. In accordance with said resolution of February 21, 1916, reassessment was made conforming to the requirements of said resolution. This reassessment, together with the necessary diagram, was made, approved, indorsed, and filed. Thereupon the board of trustees fixed a time for hearing on said reassessment and caused notice to be given and published of the time and place of the hearing, which notice described the work and the district on which the reassessment was made. At the time and place so fixed for said hearing, the board of trustees heard and considered the said reassessment and all objections thereto and adopted a resolution whereby it overruled and denied all objections to said reassessment, and approved and confirmed said reassessment as filed and presented. Thereafter, a warrant was issued and attached to the reassessment and after being recorded, these documents were delivered to the assignee of the contractor. After demand made in due form, upon the land of appellant, as well as upon the other premises covered by the reassessment, a return was made and recorded upon which it appeared that the assessment against appellant's property was wholly unpaid. Thereafter the plaintiff prosecuted this action for the enforcement of the lien claimed against the property of appellant.

[1] "It seems to be conceded that the original assessment was void by reason of the fact that the resolution of intention did not include in its description all of the work on account of which that assessment was made. The fact that the plans and specifications included more work than that which was directly described in the resolution of intention was not sufficient to extend the terms of the resolution so as to include such additional work. Such plans and specifications when prepared must conform to and be consistent with the description in the resolution of intention. (*Fay* v. *Reed,* 128 Cal. 357, 361 [60 Pac. 729]; *Bay Rock Co.* v. *Bell,* 133 Cal. 150, 152 [65 Pac. 299].)

[2] "Respondent's claim of lien is rested upon alleged compliance with the provisions for reassessment as stated in section 12¼ of the Street Work Act, added to said act in the year 1913 (Stats. 1913, p. 409). It is therein provided as follows: 'The city council may, at the request of the contractor, his assigns or the holder of the bonds representing the assessments, by resolution. duly passed, set aside any assessment or assessments and bonds, as the case may be, and order a new assessment or assessments and bonds, to be made and issued without any decree having been obtained of or from any court regarding said matter, if in its opinion the assessment be invalid, and it may take all necessary steps and make and pass all necessary orders or ordinances to reassess and relevy such assessments, and may reassess and relevy the same with the same force and effect as an original levy. Such reassessment, whether made after decree of court has been rendered, or pursuant to a resolution of the council, shall be based upon the special and peculiar benefit of the work or improvement to the respective lots, pieces or parcels of land assessed at the time of the making of the reassessment, and its total amount shall not exceed the total amount of the original assessments. Such reassessment so made shall become a charge upon the property upon which the same is levied, notwithstanding any omission, failure or neglect of any officer, body or person to comply with the provisions of this statute, relating to or connected with the improvement and the issuing of the assessment or the bonds, and notwithstanding the fact that the proceedings of the city council, board of public works or any officer of the city or agent of the contractor or other person connected with such work, may have been irregular, illegal, informal, or defective, or not in full conformity with the requirements of this statute. It is hereby declared to be the true intent and meaning of this section to make the cost and expense of all local improvements actually made in the attempted exercise of the powers conferred upon municipalities under this statute, payable by the real estate benefited by such improvement by making a reassessment therefor which shall equitably apportion to each lot, piece or parcel of land thereby benefited the amount of the actual benefits derived from said improvement, notwithstanding that the proceedings of the city council and other officers or agents

of the city, or of the contractor, may have been irregular, illegal, or defective, or not in full conformity with the requirements of this statute. Such reassessment shall be made without a repetition of the proceedings had prior to the issuance of the assessment and shall be made and issued in the following manner: The superintendent of streets shall, upon the entering of a decree of court directing the reassessment, or upon the passage of a resolution of the city council directing a reassessment, proceed at once to make a reassessment in accordance with the said decree of court, or said resolution of the city council. Such reassessment shall be made upon the property fronting on the improvement or upon the district described in the resolution of intention for said work or improvement, as the case may be, and in the event that there shall have been informalities, uncertainties or ambiguities in the description of the limits of said district, then upon the district which the court or council shall find to be that actually benefited by said improvement, but in so finding said court or council shall follow the lines described in the resolution of intention so far as the same shall be ascertained, and in all cases of uncertainty or ambiguity they shall give regard to the lines described and make such a determination as to the lines where there is any uncertainty or ambiguity in the resolution of intention as may be just and equitable. In the event that a portion of the work or improvement has been found to have been entirely without the power of said city to order done, then said assessment shall be for the remainder of the work or improvement only, and the benefits arising from the work entirely without the jurisdiction of the city to order shall not be considered in making the reassessment. Upon the completion of the reassessment it shall be presented to the city council and a day of hearing shall be fixed by it which shall be at least twenty (20) days after the filing of the reassessment. The city clerk shall then advertise the fact of said filing by publishing a notice in the newspaper in which the notice of award of contract was published, or in such other paper as the council may direct, by five (5) insertions if the paper be a daily, and by two (2) insertions if it be a weekly or semi-weekly newspaper, stating the fact that the reassessment has been filed with him and that objections to said reassessment will be heard at the time speci-

fied by the city council. At the time fixed for said hearing, or at such time or times to which the same may be thereafter adjourned, the city council shall consider the objections to said reassessment and in its discretion revise, correct and modify such reassessment in such manner as is most equitable and it shall thereupon pass a resolution approving and confirming such reassessment and such decision shall be a final determination of all matters relating to the actual benefits derived from the improvement by the respective lots, pieces and parcels of land enumerated in the reassessment. Said reassessment shall thereupon be recorded by the street superintendent, and it shall in all respects have the same effect and weight as the original assessment, and shall be enforced in the same manner. All payments made upon the original assessment shall be credited upon the reassessment and in the event that the reassessment in any instance is less than the amount of the original assessment, the excess shall be payable to the owner by the contractor.'

"In *Seattle* v. *Kelleher,* 195 U. S. 357 [49 L. Ed. 232, 25 Sup. Ct. Rep. 44, see, also, Rose's U. S. Notes], the following facts appeared: A street had been graded and sidewalks constructed for a distance including the frontage of the plaintiff's land. An assessment was levied, but this was held to be void. The work included certain planking. When the improvement was ordered, by the charter of the city of Seattle the planking was to be paid for out of the general taxes. Thereafter a statute was adopted authorizing a new assessment in cases where the old one had been declared void, upon lands benefited, to the extent of their proportionate part of the expense of the improvement based upon its actual value at the time of its completion and having reference to the benefits received. Notice by publication of the time for hearing objections was provided for, with an appeal to the courts. By proceedings had in due form under this later statute, a reassessment was levied for the whole cost of the improvement, including the cost of said planking. The circuit court of the United States declared this assessment void under the fourteenth amendment, and enjoined the city against enforcing the same. This judgment was reversed by the supreme court. Responding to the objection based upon the fact that the planking was not authorized by the original ordinance under which the work was done, the

court remarked that 'the city has done or adopted the work, and presumably has paid for it. At the end the benefit was there, on the ground, at the city's expense. The principles of taxation are not those of contract. A special assessment may be levied upon an executed consideration, that is to say, for a public work already done. (Citations.) . . . The charge of planking on the general taxes was not a contract with the land owners, and no more prevented a special assessment being authorized for it later than silence of the laws at the same time as to how it should be paid for would have. In either case the legislature could do as it thought best. Of course, it does not matter that this is called a reassessment. A reassessment may be a new assessment. Whatever the legislature could authorize if it were ordering an assessment for the first time it equally could authorize, notwithstanding a previous invalid attempt to assess. The previous attempt left the city free "to take such steps as were within its power to take, either under existing statutes, or under any authority that might thereafter be conferred upon it, to make a new assessment upon the plaintiff's abutting property'' in any constitutional way. (Citations.)'

"It is true that the Street Work Act of 1885, as in force prior to the enactment of section 12¼, afforded no escape from the obligation to provide an opportunity to protest, and to be heard thereon, before the order could be made that the work be done. But the legislature may authorize the waiver of any notice which is not essential to due process of law in the procedure that it prescribes. [3] Whether the work shall be done or not is a question solely of public interest. Whether private property shall, or shall not, be assessed therefor, is a matter which directly touches upon the rights of the owner of that property. It is upon this matter that the incidence occurs, from which his right to be heard is derived. Therefore it has been held that the legislature has power to authorize an order for street improvement without notice; but that, on the other hand, the legislature has not power to authorize an assessment to be made without notice, whereby the property owner is given an opportunity to object to the assessment, and to be heard upon his objection or protest. (*Goodrich* v. *Detroit*, 184 U. S. 432 [46 L. Ed. 627, 22 Sup. Ct. Rep. 397, see, also, Rose's U. S. Notes]; *Londoner* v. *Denver*, 210 U. S. 373

[52 L. Ed. 1103, 28 Sup. Ct. Rep. 708]; *Pasadena Park Improvement Co.* v. *Lelande,* 175 Cal. 511, 518 [166 Pac. 341].)

"In *Londoner* v. *Denver, supra,* which was a street assessment case, the statutory proceedings included an order for the street improvement, which order, made by the board of public works, was to be based upon the petition of a majority of the owners of the frontage to be assessed. It was necessary that this order be followed by an ordinance of the city council. It was provided in the statute that the finding of the city council should be conclusive that a proper petition was filed. The supreme court of Colorado held that such finding was conclusive. The matter having been brought before the supreme court of the United States on writ of error, that court, in discussing this particular question, said: 'The only question for this court is whether the charter provision authorizing such a finding, without notice to the land owners, denies to them due process of law. We think it does not. The proceedings, from the beginning up to and including the passage of the ordinance authorizing the work, did not include any assessment or necessitate any assessment, although they laid the foundation for an assessment, which might or might not subsequently be made. Clearly all this might validly be done without hearing to the land owners, provided a hearing upon the assessment itself is afforded. (*Voight* v. *Detroit,* 184 U. S. 115 [46 L. Ed. 459, 22 Sup. Ct. Rep. 337]; *Goodrich* v. *Detroit,* 184 U. S. 432 [46 L. Ed. 627, 22 Sup. Ct. Rep. 397, see, also, Rose's U. S. Notes].) The legislature might have authorized the making of improvements by the city council without any petition. If it chose to exact a petition as a security for wise and just action, it could, so far as the federal constitution is concerned, accompany that condition with a provision that the council, with or without notice, should determine finally whether it had been performed.' We think that in the case at bar there was a valid reassessment.

[4] "At the commencement of the trial the appellant objected to the introduction of any evidence on the ground that the complaint did not state a cause of action since 'the complaint sets out a warrant containing notice that bonds would issue for all assessments over twenty-five dollars remaining unpaid for over thirty days; the assessment pleaded is dated

over two years ago and the amount thereof is over twenty-five dollars and there is no pleading that a bond did not issue, or that the owner of the property assessed ordered that no bond should issue to represent the costs of the assessment.' No evidence was introduced showing that the owner of the property assessed ordered no bond should issue; and of course, no finding was made on this point. Appellant continues to insist upon this objection and urges that the finding that all the allegations are true does not support the judgment. Respondent replies that the issuance of a bond is clearly a matter of defense which should have been pleaded and proved by the defendant if in fact any bond did issue. The Street Work Act was supplemented by the Street Improvement Bond Act of 1893. (Stats. 1893, p. 33.) At the time of the proceeding in question in this action, section 4 of that act was in force in the form of its amendment in 1913. (Stats. 1913, p. 847.) Under this act it is provided that where street work is to be done under the Street Work Act of 1885, the city council may determine that serial bonds shall be issued to represent assessments of twenty-five dollars or more for the cost of any work authorized by said Street Work Act. When it has been so determined, this shall be so declared in the resolution of intention and in the notice of award. A procedure is set forth whereby, after the assessment has been perfected and recorded, a list is made and certified to the city treasurer of all assessments which are unpaid which amount to twenty-five dollars or over, and thereupon the treasurer is required to issue a separate bond for each such assessment. It is provided in section 4 that 'if any person, or his authorized agent, shall at any time before the issuance of the bond for said assessment or reassessment upon his lot or parcel of land present to the city treasurer his affidavit made before a competent officer, that he is the owner of a lot or parcel of land in said list, accompanied by the certificate of a searcher of records that he is such owner of record, and shall with such affidavit and certificate notify said treasurer in writing that he desires no bond to be issued for the assessment upon said lot or parcel of land, then no such bond shall be issued therefor and the payee of the warrant, or his assigns, shall retain his right for enforcing collection of said

assessment or reassessment as if said lot or parcel of land had not been so listed by the street superintendent.' The right which the payee, or his assigns, may thus retain for enforcing collection is the right given in direct terms by sections 12 and 12¼ of the Street Work Act.''

The point of departure, as between the conclusions arrived at by the district court of appeal and those reached upon rehearing in this court, has reference to the question last above considered touching the ˋ sufficiency of the plaintiff's complaint in the absence of an averment that a bond had not issued covering the defendant's assessment, or that the owner of the property assessed had ordered that no such bond should issue. The appellant insists that this omission from the complaint is fatal upon her appeal from the judgment. Conceding, though not deciding, that the burden was upon the plaintiff to allege the nonissuance of a bond covering the amount of the defendant's assessment as a prerequisite to the existence of his lien and of his right of action to foreclose the same for such assessment, and conceding that the defendant's objection to the sufficiency of the complaint in that regard, made for the first time at the opening of the trial of the cause, was, nevertheless, timely, it does not therefore follow that there must or should be a reversal of the judgment herein on that ground. The alleged error of the trial court in refusing to sustain said objection was an error as to a matter of pleading. It was also an error, if it be such, touching a question concerning which pleaders might reasonably differ and regarding which the trial court may excusably have been mistaken, in view of the conceded fact that the question of pleading involved is one of first impression and as to which no direct authority has been cited. For both of these reasons it is made the duty of this court under section 4½ of article VI of the constitution to make an examination of the entire cause, including the evidence, for the purpose of determining whether the error complained of has resulted in a miscarriage of justice, before we are permitted to set aside a judgment on the ground of an error as to a matter of pleading. We have made such examination and have approved and adopted the decision of the district court of appeal as to the main and meritorious issues of law and fact in the case.

Upon the question of fact as to whether or not a bond covering the amount of the defendant's assessment had been issued, the pleadings are silent, although the plaintiff's complaint is otherwise full and detailed as to the proceedings of the board of trustees of the city of Glendale leading up to the assessment and reassessment of the appellant's property and the creation of said assessment lien; and although the defendant's answer is filled with specific denials as to the validity of such proceedings and of said assessment lien; and although the proof of the various official steps leading up to the making of said assessment and reassessment and the creation of said assessment lien, responding to the issues thus framed, were full and detailed, including the introduction of the warrant, assessment, certificate, and diagram, with affidavit of service of demand and nonpayment, which are, by virtue of section 12 of the Vrooman Act (Stats. 1913, p. 408), made *prima facie* evidence of the right of the plaintiff to recover in the action. See, also, section 4 of the Street Bond Act (Stats. 1913, p. 847).

This being the state of the record, if, in fact, a bond had been issued and was outstanding when the plaintiff commenced and was prosecuting his action, that fact, if proven, would of itself have been fatal to said action, and would, if shown in evidence, have entirely avoided the necessity of any other or further defenses to said action, and would have also avoided the prolonged trial and the elaborate proofs and defenses presented therein. It is inconceivable that, under such circumstances, the defendant, with this fatal weapon in her hands, should have refrained from using it because of the doubtful question as to which of the parties should have pleaded the issuance or nonissuance of such bond. The conclusion would seem to be irresistible that no such bond had in fact been issued—that the defendant had no such weapon with which to utterly defeat the plaintiff's action—and, hence, resorted to the other defenses which her answer contains and which her offered proofs went to sustain.

This being the state of the record, and the evidence otherwise showing that the plaintiff was justly entitled to the foreclosure of his assessment lien, we cannot hold that the mere error of the trial court, if it were such, in a matter of pleading should be permitted to be successfully urged

upon this appeal, since it is apparent that the error com-plained of has not resulted in any miscarriage of justice.

The judgment is affirmed.

Shurtleff, J., Sloane, J., Wilbur, J., and Lawlor, J., con-curred.

Shaw, C. J., being disqualified by relationship to plain-tiff's attorney, did not participate.

Rehearing denied.

All the Justices concurred, except Shaw, C. J., who did not participate, owing to relationship to attorney for respondent.

Waste, J., was absent and Richards, J., *pro tem.*, was acting.