[Sac. No. 7533. In Bank. Nov. 22, 1965.]

HARRY E. HOFFMAN et al., Plaintiffs and Appellants, v. CITY OF RED BLUFF et al., Defendants and Respondents.

Rawlins Coffman and Noel Watkins for Plaintiffs and Appellants.

James G. Ford, City Attorney, Sturgis, Den-Dulk, Douglass & Anderson and Edwin N. Ness for Defendants and Respondents.

MOSK, J.—This action was brought to challenge an assessment levied by the City of Red Bluff for the purpose of financing a sewer system. Plaintiffs are the owners of eight out of 37 parcels of property upon which assessments were imposed and defendants are the city, its treasurer, and the members of the city council. The complaint sets forth three causes of action. The trial court sustained demurrers without leave to amend as to the first two and, after a trial on the merits of the third, it found in favor of defendants. Plaintiffs appeal from the ensuing judgment.

Plaintiffs do not challenge the trial court's determinations as to the third cause of action, and this opinion will be confined, therefore, to a consideration of the merits of the first and second causes.

The first questions for determination are whether the Red Bluff City Council complied with the provisions of the Special Assessment Investigation, Limitation and Majority Protest Act of 1931 (Sts. & Hy. Code, §§ 2800-3012), hereinafter called the Majority Protest Act, and if not, whether the failure to do so requires us to declare the assessments invalid.

Plaintiffs contend, in their first cause of action, that the Majority Protest Act limits assessments to 50 per cent of the true value of their land unless certain provisions exempting an assessing authority from complying with this limitation are followed and that, although the Red Bluff City Council purported to follow the exempting procedure set forth in section 2808 of the Streets and Highways Code, its attempted compliance was defective.[1] Therefore, argue plaintiffs, their land should have been assessed at only $7,255, which represents one-half the true value, and the actual assessment, $46,694.54, is invalid insofar as it exceeds that sum.

The Majority Protest Act sets forth a procedure which must be followed by the legislative body of a general law city, such as Red Bluff (Cal. Roster (1965) p. 259) prior to

---

[1]Unless otherwise noted, all section references will be to the Streets and Highways Code.

the commencement of actual assessment proceedings. The act contains provisions, one of which is section 2808, excepting some types of proceedings from its requirements. (See, e.g., §§ 2804, 2810.) Unless the legislative body of a general law city takes advantage of one of the exempting provisions, the act requires it to follow the procedure described in the footnote before it may form an assessment district or construct an improvement. Under that procedure a proposed improvement must be abandoned for one year, with an exception not relevant here, if the owners of a majority of the land in the area to be assessed, after notice and hearing, file protests against it. (§ 2930.) If the owners of a majority of the land do not protest but the improvement will result in an assessment which will amount to more than one-half the value of the land to be assessed, the legislative body may proceed only if it makes certain findings by a four-fifths vote. (§§ 2900, 2905.)[2]

Section 2808 of the Streets and Highways Code, as it read at the time involved here, provided: "None of the provisions

---

[2]The act provides that, before a legislative body may pass a resolution ordering construction of an improvement to be paid for by assessments, it must adopt a preliminary resolution or ordinance describing the character of the proposed improvement, the lands to be assessed for it, and the percentage of the cost, if any, which will be paid from sources other than assessments. (§§ 2820-2823.) If the probable assessments will exceed 50 per cent of the true value of the properties to be assessed, a formal report must be prepared describing the project, its estimated cost, the land to be assessed, the true value of each parcel, and the estimated assessment to be levied against each parcel. (§§ 2825, 2950.) A public hearing is then held, after notice to the property owners affected (§§ 2850-2859) and, if protests against the proposed improvement are filed by owners of the majority of the property involved, the project must be abandoned for one year. (§ 2930.) If the owners of more than one-half of the property do not file protests, but the proposed improvement will require an assessment amounting to more than one-half the true value of the land to be assessed, the legislative body may proceed only if it finds by a four-fifths vote that the proposed project is feasible and the land to be assessed will be able to carry the burden of the assessment. (§§ 2900, 2905.) A summary proceeding is available if the project will result in assessments amounting to less than one-half the value of the land to be assessed. Under this proceeding the property owners, after notice and hearing, may dispense with the requirement that a report be filed. (§§ 2950-2956.)

The only circumstance under which a majority protest may be overridden under the act is if the improvement is for sewerage facilities and the legislative body finds by a four-fifths vote that the improvement is necessary for the habitation of the property benefited. (§ 2932.) This section does not apply to the present action because it may be employed only after the formalities of a report, notice and hearing have been complied with and, as we shall see, none of these steps was taken in the present case.

of this division[3] shall apply to proceedings heretofore or hereafter commenced for the construction of sanitary sewers and sewage disposal works[4] when such proceedings have been recommended by the health officer of the city or county in which such proceedings are instituted as necessary as a health measure, if such recommendation is given in writing and spread upon the minutes of the legislative body conducting said proceedings, and such necessity is found to exist by resolution adopted by the affirmative vote of four-fifths of the members thereof. The findings and determinations made by the legislative body pursuant to this section shall be final and conclusive upon all persons in the absence of actual fraud.'' Section 3012 sets forth a 30-day statute of limitations applicable to proceedings attacking the validity of legislative action under section 2808.

In May 1959 the city council attempted to comply with the provisions of section 2808 by passing two resolutions. Apparently under the impression that the requirements of the section had been satisfied, the council did not take the other steps specified in the Majority Protest Act but instead proceeded to form an assessment district and to construct the sewer system under the terms of the Improvement Act of 1911. After the sewers were completed, plaintiffs protested the amount of the assessments levied against their property, asserting among other objections that the council had failed to comply with the Majority Protest Act. The council overruled the protests and plaintiffs filed this action in September 1961. The trial court sustained the demurrer to the first cause of action on the ground that it was barred by section 3012, the special statute of limitations referred to above.

The first question presented is whether the city council complied with section 2808. On May 5, 1959, it passed Resolution 1959-A by a unanimous vote. The resolution recited in pertinent part that certain sewers were proposed to be constructed in an area designated as the Northern Sewer Assessment District, described the nature of the proposed improvement and the area to be affected and declared, ''The construction of sanitary sewers together with appurtenances,

---

[3]Division 4, in which section 2808 appears, consists of the provisions of the Majority Protest Act. (§ 2800.)

[4]The section was amended in 1961 to include storm water drains and the acquisition of rights-of-way and easements necessary for the construction of the improvements covered by the section.

as hereinabove described, within said area is hereby found to be necessary as a health measure.'' In a later portion of the resolution it was declared that the council ''hereby requests the Health Officer of the City of Red Bluff, Tehama County, California, to investigate the sanitary conditions in said proposed assessment district of the City of Red Bluff, and if in said investigation said Health Officer finds that the installation of sanitary sewers in said area is necessary as a health measure that said Health Officer of the City of Red Bluff be requested to certify to this City Council the necessity of the construction of said sanitary sewers as a health measure and to recommend to this City Council of the City of Red Bluff that assessment proceedings be instituted for the construction of said Sanitary Sewers.''

On May 26, 1959, Resolution 1959-E was adopted by the three council members present. This resolution spread upon the minutes of the council a letter written by the health officer, dated May 15, 1959, stating that construction of sewers in the area referred to in Resolution 1959-A was necessary as a health measure and that assessment proceedings should be instituted. No other resolutions relating to this matter were passed.

Thus the May 5 finding of necessity by a four-fifths vote was made by the council before it received the May 15 letter from the health officer, and no finding was made after the letter was spread upon the minutes. Section 2808 appears to contemplate that a city council's finding of necessity is to be made after it has received the recommendation of the health officer, and unless the council was apprised of the health officer's opinion before it passed Resolution 1959-A, we must hold that it did not comply with the section.

Defendants assert that the council substantially met the requirements of the section, basing their claim on a letter written by the health officer to the council on March 16, 1959, several weeks before Resolution 1959-A was adopted, which assertedly formed the basis of the council's finding of necessity recited in the resolution. The letter states in part, ''In my opinion I deem it advisable to construct a sewage disposal system in the *North Addition* of the City of Red Bluff. I consider this necessary not only for orderly growth of the area but for public health reasons. . . .'' (Italics added.) This letter cannot properly be deemed the basis for the finding of necessity in Resolution 1959-A because the record indi-

cates that the North Addition of the city referred to in it and the Northern Sewer Assessment District alluded to in Resolution 1959-A are not identical and that, in fact, only three of the parcels involved in this proceeding are in the area known as the North Addition.[5] Under these circumstances, it cannot be said that the council complied substantially with the provisions of section 2808.

We next reach the problem whether the failure to meet the requirements of the section compels us to hold the assessments void. Defendants argue that the assessments cannot be declared void because the failure of the city council to comply with section 2808 did not deprive plaintiffs of any constitutional rights. They assert that the defective proceedings have been validated by curative provisions contained in the Improvement Act of 1911, the law under which the sewer system involved in the present case was constructed, and by other curative acts passed by the Legislature.[6] Under the

---

[5] According to the testimony of the city engineer, parcels 8 and 9, owned by plaintiff Mary E. Vestal, and parcel 7, owned by plaintiffs Bert and Elsie Durand, are in the North Addition, whereas the land owned by the remaining plaintiffs is outside the North Addition. Maps contained in the record show that a large number of the 38 parcels in the assessment district are outside the confines of the North Addition. The testimony of the city engineer was given and the maps introduced into evidence at a hearing on a preliminary injunction sought by plaintiffs in this action to prevent issuance of the improvement bonds for the sewer system. The testimony and the maps were incorporated into the record at the trial of the third cause of action. Also incorporated into the record was testimony of the city clerk in which she summarized the March 16, 1959, letter from the health officer, referred to above.

[6] The Improvement Act of 1911 is codified in sections 5000 et seq. of the Streets and Highways Code. Section 5003 provides: ''This division shall be liberally construed in order to effectuate its purposes. No error, irregularity, informality, and no neglect or omission of any officer, in any procedure taken under this division, which does not directly affect the jurisdiction of the legislative body to order the work or improvement, shall avoid or invalidate such proceeding or any assessment for the cost of work done thereunder. The exclusive remedy of any person affected or aggrieved thereby shall be by appeal to the legislative body in accordance with the provisions of this division.''

Section 5258 states: ''At any time within 10 days from the date of the first publication of the notice of award of the contract, any owner of, or other persons having any interest in, any lot or land liable to assessment, who claims that any of the previous acts or proceedings relating to the work are irregular, defective, erroneous or faulty, may file with the clerk a written notice specifying in what respect the said acts and proceedings are irregular, defective, erroneous or faulty. The notice shall state that it is made pursuant to this section.''

Section 5259 provides: ''All objections to any act or proceeding occurring prior to the time within which such objections are permitted to be filed in relation to the work, not made in writing and in the manner and

holding in *Chase* v. *Trout* (1905) 146 Cal. 350 [80 P. 81], reiterated in many subsequent cases (see, e.g., *In re Redevelopment Plan for Bunker Hill* (1964) 61 Cal.2d 21, 44 [37 Cal.Rptr. 74, 389 P.2d 538]; *Miller* v. *McKenna* (1944) 23 Cal.2d 774, 781-782 [147 P.2d 531]; *Southlands Co.* v. *City of San Diego* (1931) 211 Cal. 646, 656-657 [297 P. 521]; *Watkinson* v. *Vaughn* (1920) 182 Cal. 55, 58-59 [186 P. 753]; *Imperial Land Co.* v. *Imperial Irr. Dist.* (1916) 173 Cal. 660, 663-664 [161 P. 113]; *Capital Freight Lines* v. *City of Sacramento* (1962) 206 Cal.App.2d 279, 281-282 [23 Cal. Rptr. 752]; *V. R. Dennis Construction Co.* v. *City of San Diego* (1961) 188 Cal.App.2d 833, 839 [10 Cal.Rptr. 894]; *Cohn* v. *Thompson* (1920) 47 Cal.App. 135, 137-138 [190 P. 381]), a curative statute may validate all defects in proceedings except those which have resulted in violation of constitutional rights.

The rule stated in *Chase* is: " 'If the thing wanting or omitted which constitutes the defect is something the necessity for which the legislature might have dispensed with by prior statutes, or if something has been done, or done in a particular way, which the legislature might have made immaterial, the omission or irregular act may be cured by a subsequent statute.' . . . What, then, are the essentials the nonobservance of which cannot be cured? The property must be within the jurisdiction of the local board; there must be the actual performance of some work which is to be paid for, that is, a 'subject-matter' of which the council can acquire jurisdiction; an assessment or apportionment of the amount to be raised must be made; and, as above stated, there must be sufficient notice and opportunity for the hearing and determination of grievances and objections to constitute due process of law." (146 Cal. at pp. 358, 360-361.)

Plaintiffs rely on the holding in *City Street Improvement Co.* v. *Pearson* (1919) 181 Cal. 640 [185 P. 962, 20 A.L.R. 1317], that a general curative statute could not validate a proceeding in which an assessing authority failed to comply

at the time specified, shall be waived, if the resolution of intention to do the work has been actually published, as provided in this division.' ''

Several general validating acts have been passed by the Legislature since 1959, the year in which the defective proceedings involved here occurred. (See, e.g., First Validating Act of 1959, Stats. 1959, ch. 1447, p. 3723.) Section 5 of each of these acts provides, in part, ''All acts and proceedings heretofore taken by or on behalf of any public body under any law, or under color of any law, for the authorization, issuance, sale, or exchange of bonds of any such public body for any public purpose are hereby confirmed, validated, and declared legally effective.''

with the "material acts" prescribed by charter for "obtaining jurisdiction" of the proceeding. It is apparently plaintiffs' claim that compliance with the Majority Protest Act is a preliminary step by which jurisdiction to levy an assessment is obtained, and that failure of the city council to comply with the act is a defect which, under the holding in *Pearson*, cannot be reached by the curative acts.

In *Pearson* the assessing authority did not comply with a charter provision which stated that, if a proposed assessment was estimated to exceed 50 per cent of the value of a parcel of land, the resolution of intention to construct the improvement or the ordinance ordering the work to be done must provide for the assessment to be paid in installments. Although failure to meet this requirement did not result in depriving the assessed landowners of any constitutional rights, the court held that a general curative act could not validate the proceedings. It said: "We think the general rule of construction with regard to curative provisions of this character is that they are not to be considered as intended to apply to any one of those preliminary steps in the proceeding which the statute itself requires to be taken whereby jurisdiction of the proceeding is to be acquired by the local board or body in charge thereof, unless such intent is expressly declared, or appears by necessary implication. Of course, it could in no case excuse or cure a want of due process of law. And where several material acts are prescribed for obtaining jurisdiction and are adapted to that purpose, it is difficult to perceive how a general curative clause can be held to apply to any of them." (181 Cal. at pp. 648-649.)

This conclusion is contrary to the rule set forth in *Chase* and reiterated so frequently thereafter. Obviously, no constitutional objections could have been raised if the framers of the charter provision involved in the *Pearson* case had initially authorized an assessment amounting to more than 50 per cent of parcel value without also providing that the assessment was to be paid in installments. The *Chase* decision recognized that there were certain irregularities, not relating to constitutional guarantees, which a statute might make a "material and essential part of the statutory plan of procedure," but the opinion actually held that this type of irregularity may be validated by a curative act. (146 Cal. at pp. 357-358.) The case of *City Improvement Co.* v. *Pearson* (1919) *supra*, 181 Cal. 640, is overruled insofar as it conflicts

with the principles set forth in the prevailing decision of *Chase* v. *Trout* (1905) *supra,* 146 Cal. 350.

Plaintiffs next argue that, even if it were assumed that the curative acts can validate all but constitutional defects, the assessments imposed upon their property are void because the procedure followed by the city council has resulted in depriving them of due process of law. In making this argument, they do not rely upon the fact that the council failed to have the health officer's opinion before it when it passed Resolution 1959-A but assert, rather, that due process was denied because the council did not notify them that action would be or had been taken under section 2808 to waive the provisions of the Majority Protest Act, and thus they were not given an opportunity to be heard regarding the matter.

As we have seen, section 2808 does not require notice to property owners that a legislative body intends to make a determination or has made a determination that sewers in a specified area are necessary as a health measure. Indeed, the very purpose of the section is to permit an assessing authority to proceed with the construction of sewers which are necessary to public health, without observing the cumbersome notice and hearing procedures set forth in the other provisions of the act. In our view, due process does not require notice or an opportunity to be heard regarding the council's determination of necessity even though such a determination may result in foreclosing interested landowners from an opportunity to protest the making of the improvement. This is no more and no less than a normal administrative function of the duly constituted governing body of a community.

It is settled that the determination *whether* a public improvement shall be constructed is unaffected by the constitutional guarantee of due process of law, and no opportunity to protest the making of an improvement need be given. (*Cowart* v. *Union Paving Co.* (1932) 216 Cal. 375, 380-381 [14 P.2d 764, 83 A.L.R. 1185]; *Ferry* v. *O'Brien* (1922) 188 Cal. 629, 636 [206 P. 449]; see 13 McQuillin, Municipal Corporations (1950 ed.) 190-191.) Where an assessment is imposed, however, a property owner must be notified of the proposed improvement and given an opportunity to object to the assessment upon his property. (*Ferry* v. *O'Brien* (1922) *supra,* 188 Cal. 629, 636.)

Thus, if the Majority Protest Act authorized an assessment to be levied on the property of plaintiffs, there would be

justification for their claim that notice and hearing are required. ██ However, neither section 2808 nor any other provision of the act authorizes the imposition of an assessment. A legislative body which complies with the act does not thereby obtain jurisdiction to begin construction of an improvement or to levy an assessment. ██ Before such jurisdiction attaches, there must be compliance with the provisions of one of the improvement acts. These acts provide ample notice to a landowner that his property will be assessed, and they afford him several opportunities for a hearing. For example, under the Improvement Act of 1911, a person whose property will be assessed for an improvement is given notice and an opportunity to be heard after the resolution to construct the improvement is passed (§§ 5190, 5193, 5220), after the construction contract is awarded (§§ 5248, 5258), and after the construction is completed and the assessments on the individual parcels are filed (§ 5362). There is no assertion that the council failed to comply with these provisions in the present case. Under section 5366, a landowner who feels aggrieved by the amount of an assessment may appeal to the city council for a correction, as was done here. There is even a provision in the improvement act for a majority protest. Section 5222 states that if the owners of a majority of the property affected by an assessment file protests against the improvement, the legislative body must abandon the proceedings unless it overrules the protests by a four-fifths vote.

A somewhat analogous situation was presented in the case of *Londoner* v. *Denver* (1907) 210 U.S. 373 [28 S.Ct. 708, 52 L.Ed. 1103]. There, a charter provision of the City of Denver authorized assessments for improvements to be made upon certain conditions, among which was the condition that the majority of the owners of the frontage to be assessed for the paving of a street make a request for the improvement. It was also provided that the determination of the city council that the proper number of landowners had signed a petition requesting the improvement was conclusive. In rejecting an argument by the landowners that the assessments were invalid because the proper number of persons had not signed the petition for the improvement, and that a finding to the contrary by the city council was incorrect, the court stated: "The only question for this court is whether the charter provision authorizing such a finding, without notice to the landowners, denies to them due process of law. We think it

does not. The proceedings, from the beginning up to and including the passage of the ordinance authorizing the work did not include any assessment or necessitate any assessment, although they laid the foundation for an assessment, which might or might not subsequently be made. Clearly all this might validly be done without hearing to the landowners, provided a hearing upon the assessment itself is afforded. [Citations.]'' (210 U.S. at p. 378.)

It may likewise be said in the present case that section 2808 does not authorize or necessitate any assessment, that compliance with the section merely lays the foundation for an assessment which may or may not be subsequently made, and that, therefore, no notice or opportunity for hearing was required to be afforded plaintiffs regarding the city council's actions under the section.

The first cause of action also alleges that Resolution 1959-A contains certain false representations which misled plaintiffs to their prejudice. The resolution states that ''the contemplated improvement is one in which the probable assessments will not exceed the limitation'' of the Majority Protest Act and ''the limitations on the amount of the assessments'' in the act ''may be dispensed with.''[7] Plaintiffs assert they did not file protests sooner because they relied on the misrepresentation that they would not be assessed more than 50 per cent of the value of their land. The allegations of the first cause of action were incorporated into the third cause of action and, after a trial on the merits of the issue, the trial court found that plaintiffs were not misled to their prejudice by the misrepresentation in the resolution.[8] They do not claim there was insufficient evidence to support this finding, and they are therefore bound by the trial court's determination of this issue.

The second cause of action alleges that the assessment proceedings are void as to three of the parcels of land involved

[7]Before 1945, section 2808 provided that in order to come within the section, a legislative body was required to make the findings quoted above and to incorporate them into a resolution. (Stats. 1941, ch. 1069, p. 2757.) Apparently the statements were included in Resolution 1959-A due to a mistaken belief that the section still contained these requirements.

[8]The trial court found that ''the plaintiffs were not misled to their prejudice resulting in a failure to protest and file any action and proceeding to limit their liability to pay special assessments in excess of the limitations set forth in the Majority Protest Act of 1931 by reason of any false language, statements and promises to plaintiffs made by the defendant City Council set forth in Resolution 1959-A, adopted May 5, 1959.''

in this action because the city council did not have jurisdiction over that land when it passed Resolution 1959-A. The complaint alleges that on May 5, 1959, when the resolution was passed, the land in question was a part of Tehama County, that it was not annexed to the city until May 19, 1959, and that the council had not taken the steps which are required by section 5117 of the Streets and Highways Code for a city to incorporate land outside its boundaries in a proposed assessment district. Section 5117 is a part of the Improvement Act of 1911 and it provides that a city desiring to include land lying outside its boundaries in an assessment district created under the improvement act must first obtain the consent of the legislative body in whose jurisdiction the land is located.

There is no provision in the Majority Protest Act which excludes from the benefits of the act landowners whose property lies outside the boundaries of the assessing authority and there is no reason to hold that persons who own property which might be included in any future assessment district must be deprived of the advantages offered by the act. It was not improper, therefore, to include the three parcels in question in the description of the assessment district in Resolution 1959-A. Section 5117 does not refer to the preliminary requirements of the Majority Protest Act, but only to proceedings to form an assessment district under the Improvement Act of 1911. Since it is admitted that the land in question was a part of the city at the time proceedings were commenced under the improvement act, the demurrer to the second cause of action was properly sustained.

The judgment is affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Peek, J., and Burke, J., concurred.

Appellants' petition for a rehearing was denied December 22, 1965.