[Civ. No. 5646. Fifth Dist. Jan. 12, 1983.]

DUSTIN M. AUGHENBAUGH et al., Plaintiffs and Appellants, v.
BOARD OF SUPERVISORS OF TUOLUMNE COUNTY et al.,
Defendants and Respondents.

**COUNSEL**

Ernest M. Thayer, Padway & Padway and Laurence F. Padway for Plaintiffs and Appellants.

Stuart M. Gordon, James M. Hanavan, Bush, Ackley, Milich & Hallinan, Michael D. Milich, Jones, Hall, Hill & White and Philip N. Lee for Defendants and Respondents.

**OPINION**

**FRANSON, Acting P. J.—**

### INTRODUCTION

The issue in this appeal is whether appellants have stated a cause of action against respondents Tuolumne County Board of Supervisors (Tuolumne) and Groveland Community Services District (Groveland) for refund of water stand-by charges paid by appellants and other owners of unimproved lots in the Pine Mountain Lake subdivision at Groveland, California. The trial court answered the question in the negative and sustained respondents' general demurrer to appellants' complaint without leave to amend.

As we shall explain, the water standby charges were lawfully collected by respondents pursuant to the Community Services District Law (Gov. Code, § 61000 et seq.), the Irrigation District Law (Wat. Code, § 20500 et seq.) and the Revenue Bond Law of 1941 (Gov. Code, § 54300 et seq.). The standby charges are part of the bond contract and are pledged to pay the costs of the bonds. Although the amount of the charges exceeded the amount authorized by Government Code section 61765,[1] the statutory violation was cured by the Legislature's adoption of validating statutes enacted after the fixing of the charges. Appellants have not been deprived of any constitutional due process rights.

---

[1]Government Code section 61765 reads: "A district may fix, on or before the first day of July in each calendar year, a *water standby or availability charge* not to exceed ten dollars ($10) per year for each acre of land, or *ten dollars ($10) per year for each parcel of land of less than an acre within the district* to which water is made available for any purpose by the district, whether the water is actually used or not. The board of directors of a district which fixes such a charge may establish schedules varying the charges depending upon factors such as the uses to which the land is put, the cost of transporting the water to the land, and the amount of water used by the land. The board may restrict charges to lands lying within one or more improvement districts within the community service district." (Italics added.)

## THE FACTS

Since 1971, Groveland has levied and Tuolumne has collected a water stand-by charge of $6.50 per month or $78 per year from the owner of each parcel of real property in Groveland's revenue improvement district No. 1. Of this charge, $5.15 per month or $61.80 per year is used to pay principal and interest on the revenue bonds, and $1.35 per month or $16.20 per year is used for maintenance and operation of the water system.

There are approximately 4,000 parcels of land in the revenue district, and each is less than 1 acre in size.

## DISCUSSION

Appellants contend the standby charges are controlled by Government Code section 61765 (*ante,* fn. 1), which prior to June 29, 1977, limited the water standby charges to $6 per year and thereafter to $10 per year. Appellants seek a refund of the standby charges in their entirety ($78 per lot per year) and if not entitled to this, to at least a refund of the amount of standby charges collected for maintenance and operation of the water system in excess of the amount authorized by section 61765.

In 1971 the California Attorney General expressed a formal opinion (54 Ops.Cal.Atty.Gen. 225) on the following questions concerning bonds proposed to be issued by Groveland pursuant to the Revenue Bond Law of 1941: (1) May water standby charges be prescribed and collected to pay the principal and interest on the proposed revenue bonds? (2) If the answer to the first question is in the affirmative, does the Revenue Bond Law of 1941 provide a procedure whereby delinquent water standby charges prescribed to pay principal and interest on the proposed revenue bonds may constitute a lien on the real property served? And, (3) If water standby charges may be prescribed to pay principal and interest on the proposed revenue bonds, may the amount of delinquent charges be collected on the county tax roll and constitute a lien on the real property served?

After a detailed discussion of various provisions of the Community Services District Law, the Irrigation District Law and the Revenue Bond Law of 1941, the Attorney General reached the following conclusions: (1) A community services district may prescribe and collect water standby charges to pay the principal and interest on revenue bonds issued to finance the acquisition and construction of facilities for the supplying of water in a revenue improvement district formed within the community services district. (2) Pursuant to amendments enacted in 1970, the Revenue Bond Law of 1941 provides a special pro-

cedure by which delinquent water standby charges may result in a lien on the real property served. And, (3) Although revenue bonds are not secured by the taxing power of the district or county, water standby charges prescribed to pay principal and interest on the bond or the bonds in question may, if delinquent, be collected on the county tax roll and constitute a lien on the property served.

The Attorney General particularly noted that the authority for a community services district to prescribe and collect water standby charges to pay principal and interest on the proposed revenue bonds is provided by Water Code section 22280, subdivision (a), which authorizes any district to *levy assessments* and to fix and collect charges for any service furnished by the district including "use, sale, or lease of water, *which may include a standby charge whether the water is actually used or not.*" (54 Ops.Cal.Atty.Gen. at pp. 225-227, citing Wat. Code, § 22280, subd. (a), italics added.)

We approve and adopt the Attorney General's analysis and conclusions.

■ We continue our discussion by pointing out that the method of paying the principal and interest of revenue bonds is part of the bond contract. (*Shouse v. Quinley* (1935) 3 Cal.2d 357, 360 [45 P.2d 701]; *Hershey v. Cole* (1933) 130 Cal.App. 683, 688 [20 P.2d 972]; *Louisiana* ex rel. *Hubert* v. *New Orleans* (1909) 215 U.S. 170, 176-177 [54 L.Ed. 144, 148, 30 S.Ct. 40, 43]; see *Seibert* v. *United States* (1887) 122 U.S. 284, 295-297 [30 L.Ed. 1161, 1165-1166, 7 S.Ct. 1190, 1194-1195].) This being so, the bond holder can enforce the contract by an appropriate writ of mandate. (*Irvine v. Bossen* (1944) 25 Cal.2d 652, 658 [155 P.2d 9].)

Furthermore, the law pursuant to which bonds are issued is part of the bond contract. (*Moody* v. *Provident Irr. Dist.* (1938) 12 Cal.2d 389, 394 [85 P.2d 128].)

Finally, an examination of the following statutes contained in the Revenue Bond Law of 1941 leads us to conclude that the standby charges are part of the bond contract.

Government Code section 54422 provides in part: "The payment of interest on and principal of the bonds and any premiums upon the redemption of any thereof are secured by an exclusive pledge, charge, and lien upon *all of the revenues* of the enterprise. . . ." (Italics added.)

Government Code section 54423 further states: "The revenues and any interest earned on the revenues and all other funds specified in the resolution authorizing the issuance of the bonds constitute a trust fund for the security and payment of the interest on and principal of the bonds."

Government Code section 54315 defines revenues to mean "all charges received for, and all other income and receipts derived by the local agency from, the operation of the enterprise or arising from the enterprise." Government Code section 54515 states that: ". . . the charges . . . which are, pledged or otherwise made available . . . shall be at least sufficient to pay the following amounts . . .:

"(a) The interest on and principal of the bonds as they become due and payable.

"(b) All payments required for compliance with the resolution authorizing the issuance of the bonds or any other contract with the bondholders, including the creation of sinking and reserve funds.

"(c) All payments to meet any other obligations of the local agency which are charges, liens, or encumbrances upon, or payable from, the revenues of the enterprise.

"(d) All current expenses of maintenance and operation of the enterprise . . . ."

Thus, the standby charges as part of Groveland's revenues are part of the bond contract as a matter of law.

We also note Groveland's ordinances and resolutions which are part of the bond contract provide that the standby charges in their entirety shall be pledged for the payment of the cost of the bonds, and so long as the principal and interest is kept current, may be used for maintenance and operating costs.[2]

Appellants' argument that the water standby charges were not contractually made a part of the bonds because the bond contract does not *require* Groveland to levy *any* standby charges misses the point. Whatever the amount of the water standby charge prescribed under the 1971 resolution and for whatever purpose they are to be expended, the total revenue from the standby charges is pledged to pay the principal and interest on the bonds.

Appellants' argument that the standby charges are not pledged to pay off the bonds because the bond contract permits Groveland either to raise or to lower the standby charges also must fail. Again, the standby charges are part of the district's revenues and whatever amount is fixed by Groveland is pledged to pay off the bonds. Thus, the entire revenue from standby charges, including the

---

[2]Ordinance No. 1, 1968, section 18-2 of article 18; ordinance No. 2, 1971, amending section 18-2; resolution No. 11-71, 1971, sections 6.1, 6.2 and 6.3.

amount needed to pay the operating and maintenance costs of the facility, is part of the bond contract.

■ We turn now to the effect of the statutory limitation on the amount of water standby charges. Assuming the standby charges were invalid in whole or in part because of the $6 or $10 per year limitation provided by Government Code section 61765, the validating acts of the Legislature have cured the illegality. Such statutes[3] uniformly provide as follows: "*All acts and proceedings* heretofore taken by or on behalf of any public body under any law, or under color of any law, for the authorization, issuance, sale or exchange of bonds of any such public body for any public purpose are hereby confirmed, validated, or declared legally effective. This shall include all acts and proceedings of the governing board of such public body and of any person, public officer, board, or agency, heretofore done or taken upon the question of the authorization, issuance, sale, or exchange of such bonds." (Italics added.) Such statutes also provide legislative authority for any act which the Legislature could have supplied in the law under which the acts or proceedings were taken: "The foregoing provisions of this act shall operate to supply such legislative authorization as may be necessary to validate any such acts and proceedings heretofore taken which the Legislature could have supplied or provided for in the law under which such acts or proceedings were taken."

As stated in *City of Venice* v. *Lawrence* (1914) 24 Cal.App. 350, 353-354 [141 P. 406]: "It has been repeatedly held that the legislature may validate past transactions when it could in advance, without contravening constitutional provisions, have authorized the proceedings taken as a precedent condition to the exercise of municipal power in issuing bonds. In other words, as to all steps which *the legislature could, in the first instance, have dispensed with, it may by retroactive statute declare the taking thereof unnecessary.*"

Since Government Code section 61765 is merely a legislative limitation on the amount to be prescribed for standby charges each year, the legislative

---

[3]The applicable validating acts are the following:

1. The First, Second and Third Validating Acts of 1973 (Stats. 1973, ch. 38, §§ 1-11, pp. 59-65, ch. 387, §§ 1-11, pp. 823-829, ch. 388, §§ 1-10, pp. 829-834);

2. The First, Second and Third Validating Acts of 1974 (Stats. 1974, ch. 258, §§ 1-11, pp. 478-483, ch. 689, §§ 1-11, pp. 1554-1559, ch. 911, §§ 1-10, pp. 1921-1926);

3. The First, Second and Third Validating Acts of 1975 (Stats. 1975, ch. 12, §§ 1-11, pp. 11-16, ch. 680, §§ 1-11, pp. 1503-1509, ch. 681, §§ 1-10, pp. 1509-1514);

4. The First, Second and Third Validating Acts of 1976 (Stats. 1976, ch. 114, §§ 1-11, pp. 179-184, ch. 724, §§ 1-11, pp. 1739-1744, ch. 725, §§ 1-10, pp. 1745-1750);

5. The First, Second and Third Validating Acts of 1977 (Stats. 1977, ch. 33, §§ 1-11, pp. 74-79, ch. 613, §§ 1-11, pp. 2081-2086, ch. 608, §§ 1-10, pp. 1992-1997); and

6. The First, Second and Third Validating Acts of 1978 (Stats. 1978, ch. 135, §§ 1-11, pp. 352-357, ch. 666, §§ 1-11, pp. 2135-2141, ch. 667, §§ 1-10, pp. 2141-2146.)

ratification cured any violation of the statutory limitation insofar as the bonds are concerned.

■ Appellants' argument that jurisdictional defects cannot be cured by a validating statute is misplaced. The jurisdictional defects referred to in the cases cited by appellants are of constitutional magnitude. As stated in *Watkinson* v. *Vaughn* (1920) 182 Cal. 55, 58 [186 P. 753]: "The argument was there made that no so-called 'jurisdictional defect could be thus cured.' In response, however, to this argument the [cases make] a distinction between those so-called jurisdictional requirements which are called for by statute, and those jurisdictional requirements which are necessary for a compliance with the constitutional provision that property shall not be taken without process of law, or with other constitutional provisions, and it was held that while a failure to comply with jurisdictional requirements of the latter class could not be cured, a failure to comply with those of the former class might be cured by action of the legislature, since the legislature had the right, in the first instance, to omit such requirements entirely." (See also *Hoffman* v. *City of Red Bluff* (1965) 63 Cal.2d 584, 592 [47 Cal.Rptr. 553, 407 P.2d 857].)

■ Appellant's only constitutional challenge to the validity of the water standby charges is one of procedural due process, i.e., they have been deprived of their property (money) without proper notice. The argument is without merit.

Procedural due process safeguards are designed to provide an individual with the right to be heard before being condemned to suffer serious loss of property. (Tribe, American Constitutional Law (1978) p. 502.) Fair notice requirements were met in the instant case. When appellants purchased their lots they were required to sign that they had received and read a copy of the Final Subdivision Public Report issued by the California Real Estate Commissioner on September 16, 1969. This report specifically recited that the revenue bonds: "are secured by a lien upon revenue to be derived from water standby and 'other charges to be prescribed, revised, and collected' by the community services district from lot owners within the improvement district. Water standby charges, if delinquent, may be collected on the county tax roll and may result in a lien on your lot subjecting it to foreclosure proceedings.

"·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·

"The amount of the initial stand-by charges to be applied to each lot by Groveland Community Services District is $6.50 per lot per month plus any additional amount per month deemed necessary by the district to pay the maintenance and operation costs. The stand-by charge is payable by the lot owners whether or not any water is used."

Furthermore, appellants have failed to show they have suffered significant prejudice from having to pay a $6.50 per month water standby charge on their unimproved lots. Appellants have received the benefits of a water system, and regardless of whether the use of standby charges to pay for this system is unlawful under Government Code section 61765, appellants would have been required to pay for the benefits in some other manner.

Since we uphold the validity of the water standby charges as part of the bond contract, it becomes unnecessary to discuss appellants' contentions concerning the in rem action instituted by Groveland in 1972 against "all persons." (Tuolumne County Superior Court action No. 13923.)

The judgment is affirmed.

Woolpert, J., and Stanton, J.,* concurred.

A petition for a rehearing was denied February 24, 1983, and appellants' petition for a hearing by the Supreme Court was denied March 23, 1983. Bird, C. J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.