[Civ. No. 15086. Fourth Dist., Div. Two. Dec. 22, 1975.]

CLIFFORD ERVEN et al., Plaintiffs and Appellants, v.
BOARD OF SUPERVISORS OF RIVERSIDE COUNTY et al.,
Defendants and Respondents.

COUNSEL

Reid, Babbage & Coil and Donald H. Dye for Plaintiffs and Appellants.

Ray T. Sullivan, Jr., County Counsel, and Tilden L. Brooks, Deputy County Counsel, for Defendants and Respondents.

OPINION

TAMURA, J.—Petitioners sought to have the court below review and set aside actions taken by the Board of Supervisors of Riverside County authorizing an additional type of extended service in a county service area and ordering an election to be held on the question whether the maximum tax rate within the area should be increased in order to provide the additional service. The court below entered judgment denying petitioners the relief sought. This is an appeal from that judgment.

The chronology of the events leading to the instant litigation is as follows:

In 1971 the Board of Supervisors of Riverside County (Board) established a county service area in the unincorporated territory of the

county known as "Quail Valley" for the purpose of operating and maintaining street lights in the area.[1]

On November 13, 1973, the Board adopted a resolution declaring its intention to provide road improvement and maintenance service in the area and to levy a tax upon all taxable property in the area sufficient to provide the added service. The resolution set December 18, 1973, as the date for a public hearing on the matter and directed the clerk of the Board to give notice thereof by publication as provided by the County Service Area Law.

On December 18, following a public hearing, the Board adopted a resolution authorizing the additional service and the collection of taxes to pay for the service.

On March 12, 1974, the Board adopted a resolution calling a special election for the purpose of submitting to the qualified voters of the service area the question whether the maximum tax rate should be increased in order to provide the road improvement and maintenance service. The election was ordered to be consolidated with the June 4, 1974 primary election.

On May 3, 1974, petitioners (Mr. and Mrs. Erven and Mr. and Mrs. Garnand) instituted the present proceeding.[2] Mr. and Mrs. Erven were residents of Los Angeles County who owned real property in the Quail Valley service area; Mr. and Mrs. Garnand were both owners of real property in and residents of the service area. Petitioners alleged that the actions taken by the Board were invalid for numerous reasons, including the following: The improvement, maintenance and operation of roads is not a "miscellaneous extended service" which may be provided under the County Service Area Law; the Board's failure to comply with the California Environmental Quality Act of 1970 (CEQA) rendered its actions void; notice by publication of the hearing on the Board's resolution of intention failed to comport with procedural due process requirements of the Fourteenth Amendment; the maximum tax rate

---

[1]The service area was established pursuant to the County Service Area Law. (Tit. 3, div. 2, ch. 2.2, Gov. Code.)

[2]The petition was denominated "PETITION FOR ALTERNATIVE WRIT OF MANDATE, WRIT OF REVIEW, COMPLAINT FOR DECLARATORY RELIEF, ORDER TO SHOW CAUSE AND TEMPORARY STAY ORDER."

election would deny petitioners equal protection of the law in that only registered voters may vote at the election.[3]

Upon the filing of the petition, the court issued a writ of review and an alternative writ of mandate. The writ of review ordered the Board to file with the court the record of its proceedings pertaining to the challenged actions. The alternative writ of mandate ordered the Board to set aside the various resolutions in question or to show cause why it had not done so. As a return to the writs, the Board filed a demurrer and answer to the petition and a memorandum of authorities in opposition.

At the hearing on the petition, the cause was heard, argued and submitted on the pleadings, record of the Board's proceedings and memoranda of authorities. Following submission, the trial judge announced his intended decision in writing. He determined that only questions of law were presented and rejected each of petitioners' attacks upon the validity of the Board's actions. Judgment was entered denying the petition and dismissing the cause of action for declaratory relief.

On this appeal, petitioners make substantially the same contentions advanced in the court below. They urge that the Board's actions were invalid for the following reasons: (1) The Board's resolution authorizing road improvement and maintenance in the service area under the County Service Area Law was in excess of its jurisdiction; (2) failure to comply with the CEQA before adoption of the resolution authorizing the added extended service rendered the order invalid; (3) petitioners were denied procedural due process; and (4) the order calling the maximum tax rate increase election violated the equal protection clause of the Fourteenth Amendment. From the analysis which follows we have concluded that the contentions are nonmeritorious and that the judgment should be affirmed.

I

Petitioners' contention that the Board lacked jurisdiction to authorize road improvement and maintenance in the service area as an additional extended service under the County Service Area Law is two-pronged. First, they urge that the authorization was beyond the statutory power conferred on the Board by the County Service Area Law. Secondly, they

_____

[3]Although the petition alleged additional grounds of invalidity, they are not pertinent to this appeal since petitioners do not complain of the trial court's disposition of those grounds of attack on the validity of the Board's actions.

urge that since all roads in the area, except one, are private roads and since public funds may not be expended on private roads, the Board lacked the power to authorize the added service.

██ The first prong of petitioners' argument is based upon the language of the County Service Area Law, particularly sections 25210.4 and 25210.4a, quoted below.[4] Petitioners urge that since those sections fail to make express mention of road improvement and maintenance, the Board lacked power to authorize such service under the County Service Area Law. Pointing to the specific mention in section 25210.4a of "Street and highway sweeping" and "Street and highway lighting," they urge that had the Legislature intended to authorize street improvement and maintenance, it would have expressly said so.

Petitioners' reading of the statute is too restrictive. Section 25210.4 authorizes establishment of a county service area for the purpose of providing within the area "any other governmental services," referred to as "miscellaneous extended services," "which the county is authorized by law to perform and which the county does not also perform to the same extent on a countywide basis both within and without cities, . . ." Of all

---

[4]All section references in this opinion, unless otherwise indicated, are to the Government Code.

Section 25210.4 reads in pertinent part as follows:

"A county service area may be established under this chapter to provide any one or more of the following types of extended service within such area: . . . (d) Any other governmental services, hereinafter referred to as miscellaneous extended services, which the county is authorized by law to perform and which the county does not also perform to the same extent on a countywide basis both within and without cities, if:

"(1) The board of supervisors determines that such services should be provided on an extended basis within a county service area; or

"(2) Such services are specified in a request or a petition for the initiation of proceedings for the formation of a county service area or in a request or a petition for the initiation of proceedings for the furnishing of additional types of services within a county service area."

At the time here pertinent, section 25210.4a provided in part:

"The term 'miscellaneous extended services' as used in this chapter shall include, but shall not be limited to, the following:

"(1) Water service including the acquisition, construction, operation, replacement, maintenance and repair of water supply and distribution systems, including land, easements and rights-of-way and water rights.

"(2) Sewer service, including the acquisition, construction, operation, replacement, maintenance and repair of sewage collection, transportation and disposal systems, including land, easements and rights-of-way.

"(3) Pest or rodent control.

"(4) Street and highway sweeping.

"(5) Street and highway lighting including the acquisition, construction, replacement, maintenance and repair of a street or highway lighting system, including land, easements and rights-of-way."

governmental services rendered by a county, road improvement and maintenance are the most basic and traditional. They are services which the county does not perform on a countywide basis both within and outside of cities; with certain exceptions (see e.g., Sts. & Hy. Code, §§ 1700-1704, 1720, 1732), the services are authorized to be performed by the county only in unincorporated territory. (See Sts. & Hy. Code, § 1020.) Since road improvement and maintenance are basic governmental services and otherwise qualify under section 25210.4, subdivision (d), as services for which a service area may be established, the fact that they are not specifically mentioned in section 25210.4a may not be taken as an intention to exclude them. Indeed, section 25210.4a expressly provides that the term "miscellaneous extended services" shall include *"but shall not be limited to"* those specifically mentioned in the section. Manifestly, the Legislature did not intend the specific services listed in the section to be all inclusive.

Our reading of the statute is borne out by the legislative history of section 25210.4a as recounted by the Attorney General in 22 Opinions of the Attorney General at page 18 where he states: "The law was proposed to the Legislature as Assembly Bill No. 1841. As carried in the original bill, proposed section 25210.4 expressly excepted construction and maintenance of county roads from the class of 'miscellaneous extended services.' By an amendment in the Assembly on April 10, 1953, the exception was stricken from the bill. This action remained unchanged throughout successive amendments to the bill. The original bill indicates an understanding on the part of its authors that road work is one form of miscellaneous extended services, which had to be barred in specific terms, if at all. The amendment, on the other hand, demonstrates a legislative intent to include road work within the category of miscellaneous services."

We agree with the Attorney General's conclusion that road improvement and maintenance constitutes "miscellaneous extended services" within the purview of the County Service Area Law.

Petitioners rely on *Byers* v. *Board of Supervisors,* 262 Cal.App.2d 148 [68 Cal.Rptr. 549], where this court held that a board of supervisors lacked statutory authority to establish a county service area for the purpose of acquiring, maintaining and operating a television translator station.[5] The rationale of *Byers* was that unless specifically authorized,

---

[5]The Supreme Court denied a hearing in *Byers.* Chief Justice Traynor and Justices Tobriner and Mosk voted for a hearing.

In 1969 the Legislature added section 25210.4, subdivision (f), expressly authorizing establishment of a county service area to provide television translator stations as an

the County Service Area Law contemplated establishment of a service area for the purpose of providing only such services as are "historically governmental in nature; activities consistent with our general scheme of government." (262 Cal.App.2d at p. 156.) Since road improvement and maintenance are traditional governmental functions rendered by counties, the conclusion we reach in the case at bench is consistent with *Byers.*

The second prong of petitioners' jurisdictional argument merits little consideration. They contend that since the evidence before the Board was that all roads in the service area, except one, were in private ownership and since public funds may not ordinarily be expended on private roads, the Board lacked jurisdiction to authorize road improvement as an extended service in the area.

Petitioners' contention lacks merit. By necessary implication, the Board's action permits only such road work in the area as the county "is authorized by law to perform." (§ 25210.4, subd. (d).) At the March 12, 1974 hearing at which the Board's decision to call the maximum tax rate election was made, the county counsel advised the Board that public funds could not be expended on roads in the service area until a judicial determination had been obtained that they were public roads. It may be presumed that the Board will comply with the law. (Evid. Code, § 664; *City of Beaumont* v. *Beaumont Irr. Dist.,* 63 Cal.2d 291, 297 [46 Cal.Rptr. 465, 405 P.2d 377]; *San Bernardino County Flood etc. Dist.* v. *Superior Court,* 269 Cal.App.2d 514, 521 [75 Cal.Rptr. 24].)

## II

Petitioners contend that the Board's decision to provide road improvement and maintenance as an added extended service in the service area is a "project" within the meaning of the CEQA and had to be preceded by the preparation and consideration of an environmental impact report or, at the very least, by a negative declaration that the "project" will not have a significant effect on the environment.

The Board's decision was a discretionary act embraced within the statutory definition of "project" under the CEQA. (Pub. Resources Code,

extended service. The section limits the number of translators which may be erected and the number of television channels which may be provided. (Stats. 1969, ch. 188, § 1, p. 467.)

Section 25210.4b, enacted in 1972, allows the creation of a county service area in counties of certain classes to provide unrestricted television translator service. (Stats. 1972, ch. 128, § 1, p. 168.)

§ 21065. See *Bozung* v. *Local Agency Formation Com.,* 13 Cal.3d 263, 278-279 [118 Cal.Rptr. 249, 529 P.2d 1017].) Board authorization was a necessary step in providing road improvement and maintenance service in the area at the expense of the service area. Thus, unless the "project" was exempt under the implementing administrative guidelines promulgated by the State Resources Agency pursuant to the CEQA either as a project falling within one of the categorical exemptions defined by the regulations adopted pursuant to Public Resources Code sections 21084 and 21085 or because "it can be seen with certainty that there is no possibility that the activity in question may have a significant effect on the environment" (Cal. Admin. Code, tit. 14, § 15060), the Board should have determined whether its action may have a significant environmental effect before it approved the project. (*No Oil, Inc.* v. *City of Los Angeles,* 13 Cal.3d 68, 79-80 [118 Cal.Rptr. 34, 529 P.2d 66].) If the Board's initial study demonstrated that the project would not have a significant environmental effect, a negative declaration to that effect should have been prepared and filed. (Cal. Admin. Code, tit. 14, § 15083.)

Since the Board admittedly took none of the foregoing steps before making its decision, the only remaining question is whether the "project" is exempt from the CEQA under the implementing guidelines issued by the State Resources Agency. The answer to that question requires a close examination of the precise nature of the activity contemplated by the Board. (See *Bozung* v. *Local Agency Formation Com., supra,* 13 Cal.3d 263, 281.)

We have before us, as did the trial court, a record of the Board's proceedings on December 18, 1973, when it adopted the resolution adding road improvement and maintenance as services which may be provided in the area. The record shows that a specific plan of road improvement and maintenance had neither been prepared nor proposed. The assistant county administrator reported that there was no proposal to open new roads in the area or to widen existing roads. The record further shows that those who had petitioned the Board for the added service desired only repair and maintenance of existing roads. In short, the only activity contemplated by the Board was the maintenance and repair of public roads already existing in the area.

In the foregoing circumstances, the actions contemplated by the Board's resolution fell within a category exempted under the implementing guidelines issued by the State Resources Agency pursuant to Public

Resources Code section 21084.[6] Among the classes of projects which the State Resources Agency has determined not to have a significant effect on the environment and, therefore, exempt from the provisions of the CEQA is the following: "Class 1 consists of the operation, repair, maintenance or minor alteration of existing public or private structures, facilities, mechanical equipment, or topographical features, involving negligible or no expansion of use beyond that previously existing, including but not limited to: . . . (c) Existing highways and streets, sidewalks, gutters, bicycle and pedestrian trails, and similar facilities; . . ." (Cal. Admin. Code, tit. 14, § 15101, subd. (c).)

Since the action taken by the Board merely authorized repair and maintenance of public roads in the service area, it fell within the foregoing categorical exemption established by the administrative guidelines.[7]

Should the Board decide in the future to widen existing public roads or to acquire private road easements, by condemnation or dedication, and improve them, such actions would not qualify for exemption and compliance with the CEQA would be required either by the preparation and consideration of an environmental impact report or by a negative declaration. (See *Plan for Arcadia, Inc.* v. *City Council of Arcadia,* 42 Cal.App.3d 712, 724-725 [117 Cal.Rptr. 96].)

We conclude that the contention that the Board's action was invalid because of noncompliance with the CEQA is without merit.

### III

▋ Petitioners contend they were denied procedural due process because the only notice of hearing of the Board's resolution of intention was by publication. The contention lacks merit.

---

[6]Public Resources Code section 21084 provides: "The guidelines prepared and adopted pursuant to Section 21083 shall include a list of classes of projects which have been determined not to have a significant effect on the environment and which shall be exempt from the provisions of this division. In adopting the guidelines, the Secretary of the Resources Agency shall make a finding that the list or classification of projects referred to in this section do not have a significant effect on the environment."

Public Resources Code section 21085 provides: "All classes of projects designated pursuant to Section 21084, together with emergency repairs to public service facilities necessary to maintain service, shall be exempt from the provisions of this division."

[7]In view of our conclusion that the Board's action came within the categorical exemption, we need not consider whether the "project" was exempt because "it can be seen with certainty that there is no possibility that the activity in question may have a significant effect on the environment." (Cal. Admin. Code, tit. 14, § 15060.)

The proceeding in question was simply an administrative determination by the county to provide governmental services to a specified area with the costs to be borne by ad valorem taxes levied on taxable property in the area. Due process does not require a decision by a county that public improvement is required in a specific area to be preceded by notice and hearing. The decision whether a public improvement shall be constructed is unaffected by the constitutional guarantee of due process, and an opportunity to protest the improvement is not constitutionally required. (*Hoffman* v. *City of Red Bluff,* 63 Cal.2d 584, 594 [47 Cal.Rptr. 553, 407 P.2d 857]; *County of Riverside* v. *Whitlock,* 22 Cal.App.3d 863, 875 [99 Cal.Rptr. 710]. See *Del Paso Recreation & Park Dist.* v. *Board of Supervisors,* 33 Cal.App.3d 483, 498-499 [109 Cal.Rptr. 169].) The right to protest the improvement is purely a creature of statute. (*Cowart* v. *Union Paving Co.,* 216 Cal. 375, 380-381 [14 P.2d 764, 83 A.L.R. 1185]; *Ferry* v. *O'Brien,* 188 Cal. 629, 636-637 [206 P. 449]; *County of Riverside* v. *Whitlock, supra.*)

In the case at bench the record discloses that the Board conducted the proceedings in strict conformity with the provisions of the County Service Area Law. Notice of hearing was given in the manner and for the time prescribed by the act. Due process did not require more.

*Firestone Tire & Rubber Co.* v. *Board of Supervisors,* 166 Cal.App.2d 519 [333 P.2d 378], cited by petitioners, is consistent with the view we have expressed. That case involved annexation of territory to a fire protection district. Although the notice of hearing failed to comply with statutory requirements in several important respects, including the requirement that the newspaper in which the notice is published must be one distributed in the territory to be annexed, the reviewing court nevertheless held that the annexation was effectively validated by a validating statute. The court held that since the fire protection district was simply an agency of the state organized to perform limited governmental functions, the costs of which would be borne by ad valorem taxes levied on all taxable property, the Legislature could have constitutionally authorized annexation to the district without notice and hearing. Since notice and hearing were not due process requirements, the court concluded that despite the faulty notice the annexation was effectively validated by a curative statute.

## IV

Finally, petitioners contend that nonresident landowners were denied equal protection because only registered voters residing in the

service area were eligible to vote at the maximum tax rate increase election.

Preliminarily we note that the issue sought to be raised has become moot. Petitioners' request for an order staying the special election was denied; the election was held as scheduled on June 4, 1974; and the proposition carried.[8] In these circumstances, there is no effective relief which can be granted in these proceedings even if petitioners' contention were meritorious. However, since the constitutional issue presented is one of statewide concern and one which will arise again in the future, a decision on the merits is appropriate for future guidance of county governments. (*Knoll* v. *Davidson,* 12 Cal.3d 335, 344 [116 Cal.Rptr. 97, 525 P.2d 1273]; *Zeilenga* v. *Nelson,* 4 Cal.3d 716, 719-720 [94 Cal.Rptr. 602, 484 P.2d 578]; *De Bottari* v. *Melendez,* 44 Cal.App.3d 910, 914 [119 Cal.Rptr. 256].)

The election was called pursuant to Revenue and Taxation Code section 2286, subdivision (b).[9] "Qualified voter" for the tax rate increase election means a voter who meets the qualifications for voters of the local agency for other purposes. If no other specific qualification exists, it means registered voters, as defined in the Elections Code, residing in the area within which the election is to be held. (Rev. & Tax. Code, § 2285.) Nonresident landowners are not authorized to vote in a county service area election.

The trend of recent decisions concerning the right of absentee landowners to participate in elections is contrary to the position espoused by petitioners. (See *Curtis* v. *Board of Supervisors,* 7 Cal.3d 942, 963 [104 Cal.Rptr. 297, 501 P.2d 537]; *Burrey* v. *Embarcadero Mun. Improvement Dist.,* 5 Cal.3d 671, 682-683 [97 Cal.Rptr. 203, 488 P.2d 395]; *Cooper* v. *Leslie Salt Co.,* 70 Cal.2d 627, 637-638 [75 Cal.Rptr. 766, 451 P.2d 406].) In *Curtis* v. *Board of Supervisors, supra,* our high court struck down a statute requiring proceedings for the incorporation of a city to be terminated upon the filing of written protests by landowners representing 51 percent of the total assessed valuation of land in the proposed city. Pertinent to the contention raised by petitioners herein is the court's

---

[8]Although the record on appeal does not show whether the election was held, it was stipulated at oral argument that the election was held and that the proposition carried.

[9]Revenue and Taxation Code section 2286, subdivision (b), provides: "(b) In the event that a local agency which was in existence on the effective date of this chapter desires to change its maximum property tax rate, the governing body of such agency shall call a special election, pursuant to the provisions of this article, to approve a new maximum property tax rate for the agency."

treatment of the landowners' contention in *Curtis*. It was there urged that both residents and landowners have an interest in incorporation and since only residents can vote at the incorporation election, the statute pertaining to landowners' protests was necessary to give landowners a voice in incorporation. In other words, the landowners argued that the statutory plan for incorporation of cities merely conditioned incorporation on the *concurrent* approval of two interested groups. The court rejected the argument. It held that in order to be valid a statute requiring concurrent majorities of both registered voters and landowners must meet the compelling state interest test. The court concluded by saying: "It is open to question whether the state can give nonresidents a vote equivalent to that of residents; we entertain no doubt that the state cannot enact a provision which gives absentee and corporate landowners the power to *override* the needs and interests of the residents." (*Curtis* v. *Board of Supervisors, supra,* 7 Cal.3d 942, 963; original italics.)

Although the precise question confronting us was not before the court in *Curtis,* its observation that "[i]t is open to question whether the state can give nonresidents a vote equivalent to that of residents" suggests that in order to be valid a voting scheme giving nonresident landowners the same voting rights accorded residents must satisfy the compelling state interest test. It is doubtful that such a voting scheme can ever meet the strict scrutiny test with respect to elections held by governmental entities exercising general governmental powers. (See *Burrey* v. *Embarcadero Mun. Improvement Dist., supra,* 5 Cal.3d 671, 682-683; *Cooper* v. *Leslie Salt Co., supra,* 70 Cal.2d 627, 637-638.) As *Curtis* explained: "[I]t is the residents of a region, not the nonresident landowners, who as a class are the more deeply concerned with its government," and that although "residents have a constitutional right to vote in municipal elections (*Avery* v. *Midland County* (1968) 390 U.S. 474, 476 [20 L.Ed.2d 45, 48-49, 88 S.Ct. 1114]); the *nonresident landowners have no such right* (see *Chadwell* v. *Cain* (1959) 169 Ohio St. 425, 431 [8 Ohio Ops.2d 449, 160 N.E.2d 239])." (7 Cal.3d 942, 962-963; italics supplied.) A county is, of course, an entity exercising general governmental powers. The county Service Area Law was designed as merely an alternative method for providing extended county governmental services within a specific area and for the levy of ad valorem taxes in the area sufficient to pay for the services. (§ 25210.1.) County service area elections, including maximum tax rate elections, are therefore municipal in nature.

We conclude that the statute permitting only registered voters residing in the area to vote at a county service area elected do not offend the

equal protection clause of the state or federal Constitutions. Indeed, absent demonstration of a compelling state interest for so requiring, extension of voting rights to nonresident landowners equivalent to that accorded residents would result in an unconstitutional dilution of the voting rights of residents.

The judgment is affirmed.

Gardner, P. J., and Kaufman, J., concurred.